S-M News Company, Inc., Appellant, *v.* Joseph Simons, as President of the Newspaper and Mail Deliverers' Union of New York and Vicinity, Respondent.

First Department, February 13, 1952.

*J. Bay Robinson* of counsel (*Forbes D. Shaw* and *Pincus M. Berkson* with him on the brief; *Whitman, Ransom, Coulson & Goetz,* attorneys), for appellant.

*Stephen C. Vladeck* of counsel (*Vladeck & Elias,* attorneys), for respondent.

CALLAHAN, J.  Plaintiff is a national distributor of magazines. In the metropolitan area it operates through local wholesalers or delivery agents, who collect, bundle and truck the magazines to retailers, make collections, check quantities sold, redistribute surpluses and factor the accounts.  Defendant is a labor union representing drivers and others employed by the wholesale delivery agents in the city of New York.

From some time in 1948 to October 24, 1951, plaintiff had contracted with thirteen separate wholesalers for the distribution of its magazines in the metropolitan area.  Prior to the latter date it notified two of these wholesalers, Seljan News Company and Queensbrook News Company, Inc., that it was dissatisfied with their services and that after the said date it would transfer their routes, which covered parts of Brooklyn and Queens, to Novick News Company and Bukzin News Company, Inc.  The Novick and Bukzin companies were two of the thirteen distributors with which plaintiff was already doing business in adjacent territories.

Defendant union was recognized as the collective bargaining agent by practically all of the metropolitan wholesalers, and in fact largely controlled all labor activities in the field.  It had labor contracts with Seljan, Queensbrook and Novick covering all the times in question.  It also had a contract with Bukzin,

but this did not cover those employees who did checking and collections. Bukzin's contract had expired, and a new contract was being negotiated.

When plaintiff attempted to transfer the work of Seljan and Queensbrook to Novick and Bukzin, the latter were advised that defendant union would not permit them to extend their activities to the new territories. The contention of plaintiff, and the gravamen of its complaint, is that this interference was due solely to the fact that Simons, the president of defendant union, was related to several of the persons who owned and controlled Seljan and Queensbrook, and that Simons interfered to serve the interests of his relatives and not the interests of the union members. It supported this claim by affidavits of officers of Novick and Bukzin showing that when the transfer was announced, Simons and other union agents called the affiants to conferences in which they stated, in effect, that nobody but Seljan and Queensbrook would be permitted to deliver in the disputed territories, that the union had decided to back Simons in anything he wanted to do, and that if delivery was attempted by those to whom the territories had been awarded, strikes would be called against all of the work being done by Novick and Bukzin. Thereafter, business agents called at the plants of Novick and Bukzin on the first morning that these new contracts were to be operative and directed the drivers not to take out plaintiff's magazines in the new territories. The drivers obeyed the instructions of the union agents, although they stated their willingness to work if the union permitted. Novick and Bukzin were permitted to and did continue to deliver plaintiff's magazines in their former territories, but not in the new territories.

Plaintiff then brought this action for an injunction. The papers submitted by plaintiff on a motion for a temporary injunction set forth in detail the facts and circumstances concerning the transaction between plaintiff and its wholesalers, the details of defendant's interference by work stoppage, including alleged threats by Simons and other union officers. It showed that large quantities of magazines were not being delivered and plaintiff's damage resulting from such action. Defendant, in opposition, submitted a single affidavit by Simons, its president, which said, in effect, that if the transfer of territories was effected, twelve members of the union would lose their jobs, that Novick could only absorb two of these men, that Bukzin had no contract with the union, although it did

employ union men in certain capacities, and that the union was not going to stand idly by, while nonunion or workers from other unions take over work which had been done by union employees under the former employers. The last statement could only relate to the collectors and checkers of Bukzin. As to the charge of a selfish personal motive on the part of Simons to help his relatives and the threats made, he did not even deny such charges, but merely pointed out that this family relationship did not extend to the other members of the executive board of the union, which supported the action taken. No affidavits by the other agents charged with the threats were submitted.

Thus, defendant submitted no denials whatever of the detailed specifications of fact as to the unlawful interference and threats preceding the work stoppage despite the fact that plaintiff's papers had given the times, places, names and statements made by the several union agents. Defendant did not deny a statement by Bukzin that it had arranged to hire eight additional drivers who were members of defendant union, giving their names, who were ready to serve the new routes on the morning of October 24th. If this was the fact, then the change-over would have meant the net loss of two jobs, not twelve, for defendant admitted that Novick would take on two additional union drivers.

Novick had attached to its affidavit a copy of its contract with the union, which contained a clause recognizing the right of Novick at any time to lay off men for economic reasons and to combine, alter or discontinue routes, provided a designated board ascertained that the reason for the action taken was an economic one. Another paragraph of the contract provided, in effect, that if Novick acquired a new route from another wholesaler and this caused a loss of employment, then Novick was to give preference in hiring to men laid off and would grant severance pay. Also, the contract with Novick provided for arbitration of disputes. In fact, Novick made a demand for arbitration immediately after the work stoppage. This indicates further that defendant had ample means of redress other than a work stoppage at least as to Novick and tends to support plaintiff's charge that the motive for the stoppage was to serve Simons' personal interests.

Although Bukzin had no contract, it hired union drivers and the work stopped was that of the drivers. This, and the fact that Bukzin was permitted to continue deliveries of the maga-

zines of plaintiff and others on its original routes without interference, further tends to support plaintiff's charge that no labor objective whatever was involved, and that there was an ulterior motive to control the apportionment of territories in the action taken by defendant.

The Special Term denied the motion for an injunction on the ground that plaintiff failed to show that it could not obtain others to make deliveries or that it would suffer irreparable damage. We think that these grounds are not realistic, when the complete domination of labor in this field by defendant is recognized. Irreparable damage is established prima facie at least by the conceded fact that many thousands of dollars worth of plaintiff's monthly magazines are not being delivered on time. The time of delivery is of the essence where monthly periodicals are concerned.

Furthermore, the Special Term denied a cross motion to dismiss the complaint for a permanent injunction. This was a recognition that no violation of section 876-a of the Civil Practice Act was involved, and that section 877 of the Civil Practice Act was applicable to the action.

On this appeal, defendant for the first time raises the point that the courts of this State do not have jurisdiction of this action for an injunction because exclusive jurisdiction is vested in the National Labor Relations Board under the Federal Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act (U. S. Code, tit. 29, § 151 *et seq.*; 61 U. S. Stat. 136 *et seq.*). It contends that the present controversy involves an unfair labor practice on the part of a union under section 8 of that statute, which provides, *inter alia,* as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents   *   *   *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person ".

This is not a situation where it might be argued that the State courts must yield jurisdiction to the National Labor Relations Board (N. L. R. B.) under *Costaro* v. *Simons* (302 N. Y. 318). In that case the Court of Appeals determined upon a reading of the complaint that there was an unfair labor practice involved of which the N. L. R. B. had exclusive jurisdiction, and dismissed the complaint. Defendant here cites a portion of one paragraph of the present complaint and contends that this averment is substantially the same as the provision of section 8 (subd. [b], par. [4], cl. [A]) above quoted. But we do not read the *Costaro* case to hold that jurisdiction of an action is lost by the State courts merely because one portion of one paragraph of a complaint might indicate similarity between the instant controversy and some unfair labor practice as defined in the Federal act. The whole complaint must be read, the gravamen of the cause of action ascertained, and the intent of the statute determined, when comparison is made (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300). Clearly, the gravamen of the present complaint is that no labor activity is involved in defendant's action, but an unlawful attempt is being made by one connected with a union to use the power of the union for selfish and personal aggrandizement of individuals not connected with labor. If this is the case, then this is not a labor dispute at all and no labor practice is involved, but the strength of labor is being misdirected to an activity in restraint of the freedom of contract by individuals who happen to be able to control and direct labor's power.

The Taft-Hartley Act was never intended to be used as a cloak for such unlawful conduct. It was an act to regulate labor controversies, not one to aid individuals to commit extortionate or other unlawful acts.

Of course, if a labor dispute was involved between defendant and Novick or Bukzin, which only incidentally injured plaintiff, it may well be that plaintiff would have no redress. Plaintiff has presently, at least, established that no such labor dispute is involved. The Federal statute could have no application whatever in a matter involving no legitimate labor objective or labor controversy.

In view of our finding that there is no showing of a labor dispute, we do not need to decide the question as to whether a work stoppage by the union against Novick and Bukzin, because they took on additional routes and territories, constituted an unfair labor practice within section 8 (subd. [b], par.

[4], cl. [A]) of the Federal statute. The language of the statute might seem broad enough to cover any concerted action tending to induce an employer to refuse to handle the goods of another or to cease doing business with another with whom he has contracted. But the clause has been held to apply to secondary strikes or boycotts (*National Labor Relations Bd.* v. *United Brotherhood of Carpenters,* 184 F. 2d 60). The introducer of the legislation, Senator Taft, so construed it (93 Congressional Record 4198, April 29, 1947). There is not any labor dispute between plaintiff and its employees, and any work stoppage or strike against Novick and Bukzin would seem to be primary and not secondary activities under the circumstances. The present case would seem to differ from *Labor Bd.* · v. *Denver Bldg. Council* (341 U. S. 675), in that in the back ground of the cited case there was a long standing labor dispute between the striking union and the nonunion subcontractor. However, the cases are alike in that the object sought was to induce the termination of a contract. Under the circumstances it would seem preferable to allow this question of the application of the statute to remain open until defendant's claim as to the nature and object of its activities is revealed upon the trial.

We think it clear that there is no repugnance or conflict here between the Federal act cited and the exercise of jurisdiction by this court in these circumstances. There is no suggestion in the Federal act that it has pre-empted the field in relation to the enjoining of unlawful conduct such as here complained of.

A second point is raised that there is a labor dispute involved in this case within the meaning of section 876-a of the Civil Practice Act. This contention was made the basis of a motion to dismiss the complaint. The motion was denied. Defendant has not appealed from that dismissal. Nevertheless, we consider the merits of the question. We must determine it, however, on the pleading and affidavits found in the record on appeal and without consideration of the affidavits submitted to this court on a motion for an interim stay pending appeal. The only affidavit submitted by defendant on the original motion was that of Simons. In face of plaintiff's charge it failed, as already stated, to set forth facts showing the existence of a genuine labor dispute. The affidavit was more eloquent in what it failed to discuss than in anything said therein. Limited to what is in the present record, it is clear that no lawful labor dispute under section 876-a is involved. If the contrary is

the fact, it has not been sufficiently revealed as yet. The trial may disclose otherwise. We can only act on what is now before us. So acting, we must find that it has presently been shown that defendant's objective is an unlawful one, and thus the controversy is not a labor dispute in the sense of section 876-a of the Civil Practice Act (*American Guild of Musical Artists* v. *Petrillo*, 286. N. Y. 226).

Of the other points raised it is only necessary to refer to the contention that an injunction is unnecessary because there is no showing of irreparable injury. The record discloses that plaintiff is in the business of distributing magazines throughout the city of New York, and the employees of its wholesale delivery agents are thoroughly unionized by defendant. At present only a small portion of plaintiff's sales are being interfered with. It does not require prophetic vision to foresee what might happen — with a further basis for strikes and complete interference with that business — if plaintiff attempts to make deliveries through nonunion agencies.

Sales of monthly magazines are involved. The loss of immediate sales is not the only element of loss suffered by failure to get these periodicals in the hands of customers in time. Money damages might not be ascertainable, or if ascertainable, might fail to compensate the loss of good will of the reading public, which plaintiff could sustain by a continued refusal to deliver its products. We think, therefore, that a prima facie showing of irreparable damage has been disclosed.

Accordingly, the order appealed from should be reversed, with $20 costs and disbursements to appellant, the motion for a temporary injunction granted upon the furnishing by plaintiff of an adequate undertaking, and an early trial of the action is directed.

DORE, J. P., COHN and VAN VOORHIS, JJ., concur; SHIENTAG, J., dissents and votes to affirm " on the ground that the question as to whether or not there was here presented a labor dispute within the meaning of section 876-a of the Civil Practice Act should be determined after a hearing and not on the basis of affidavits ".

Order reversed, with $20 costs and disbursements to the appellant, the motion for a temporary injunction granted upon the furnishing by plaintiff of an adequate undertaking, and an early trial of the action is directed. Settle order on notice.