Jambs J. Conroy, J.
In an action permanently to enjoin the defendants from conduct which will cause irreparable injury to the plaintiffs’ newspaper business, plaintiffs move for a temporary injunction. By cross motion the defendants seek to dismiss the complaint for legal insufficiency (Bules Civ. Prac., rule 106, subd. 4) upon the ground that plaintiffs have made no attempt to comply with section 876-a of the Civil Practice Act, although a labor controversy is here involved, and on the further ground that this court does not have jurisdiction of the subject matter of this action (Bules Civ. Prac., rule 107, suhd. 1), in that the matters alleged in the complaint are vested exclusively in the National Labor Belations Board.
The plaintiff, Long Island Daily Press Publishing Company, Incorporated, owns and publishes a newspaper hereinafter referred to as the Press with approximately 285,000 copies circulated daily in the counties of Queens, Nassau and Suffolk and approximately 375,000 copies circulated on Sundays. The plaintiff, Newspaper Enterprises, Inc., owns and publishes a newspaper, hereinafter referred to as the Star-Journal with a daily circulation — solely in the county of Queens — of approximately 100,000 copies. The defendants are newsdealers under contract with one or the other of the plaintiffs. They are charged with having acted in concert in the commission of various unlawful acts enumerated in the complaint which have caused the plaintiffs irreparable injury and will continue to cause such injury unless restrained by this court.
*482 Inasmuch as the first branch of the defendant’s cross motion seeks the dismissal of the complaint for legal insufficiency, the material allegations thereof, as well as the inferences reasonably to be drawn therefrom must be taken as true (Garvin v. Garvin, 306 N. Y. 118, 120), unaided by the companion motions in which affidavits and other proof have been submitted. (Berwin & Co. v. American Safety Razor Corp., 282 App Div. 922.)
Thus considered, we have here a situation wherein each defendant has entered into a written contract with one or the other plaintiff which he signed as “News Dealer ” with the exclusive right to deliver plaintiffs’ newspapers at a specified price per copy to the homes of subscribers in a designated territory through “ carriers ” employed by each defendant to serve a designated route assigned to each carrier by the particular defendant by whom he is employed. Plaintiffs charge that on May 17,1958 certain of the defendants, acting in concert, returned the Press advance sections of the Sunday, May 18, 1958 edition of said newspaper and advised its owner and publisher that they would not deliver the Sunday edition of May 18, 1958, would not perform their contracts and would not deliver or arrange to deliver copies of either newspaper to the subscribers at their homes; that the defendants induced and continued to induce or threaten other newsdealers, who have entered into similar contracts with the plaintiffs, not to perform the same, and have caused copies of the plaintiffs’ newspapers that had been delivered to carriers to be surreptitiously removed or destroyed after they have been delivered to the homes of subscribers. Plaintiffs also charge defendants with having threatened such other newsdealers with bodily harm and damage to property if they continue to have copies of such newspapers delivered to the homes of subscribers, and defendants have caused such newsdealers to refrain from making deliveries and, by similar threats to persons engaged in delivering or attempting to deliver the aforesaid newspapers at the homes of subscribers, have interfered with and prevented such delivery. In addition, plaintiffs charge that defendants have spread false and untrue statements about the plaintiffs and, particularly, the Press, that a strike has been called of newspaper dealers because said plaintiff has increased the price of its newspapers, but refused to pass any part of this increase to the carrier and newspaper dealers. The foregoing conduct is alleged to have prevented the plaintiffs and will prevent them from delivering many copies of their respective newspapers to subscribers at their homes and thereby, plaintiffs have been and will continue to be irreparably damaged in loss of circulation and in other *483 respects, including monetary damages not susceptible of ready or accurate determination and for which the defendants, on information and belief, are unable to respond financially.
The court is of the opinion that upon the foregoing allegations of the complaint the defendants are independent contractors for the distribution of plaintiffs’ newspapers, rather than their employees. Therefore, no labor activity is involved which would render this controversy a labor dispute within the meaning of section 876-a of the Civil Practice Act. (Arnold Bakers v. Strauss, 1 A D 2d 604.) This is simply an action, within the ambit of section 877 of the Civil Practice Act, to restrain unlawful conduct on the part of the individual defendants, acting in concert. As such, the complaint states sufficient facts to constitute a cause of action, and the motion to dismiss it is denied.
In support of the second branch of the cross motion, defendants have submitted affidavits in which they claim that they are mere employees of the plaintiffs and members of a labor union whose customary strike and organizational activities the plaintiffs seek improperly to restrain; that such labor union, of which all defendants are members, has filed with the National Labor Relations Board charges of unfair labor practices against the plaintiffs, and that consequently this court lacks jurisdiction over the subject matter of this action.
The fundamental facts concerning the contracts between the plaintiffs and their newsdealers, including the defendants, are not in dispute. The defendant Gratto, who is the vice-president of the New York Newsdealers Association, an alleged labor union organized in March 1957, admits in his affidavit that each of the contracts grants the particular newsdealer ‘1 the privilege of distributing plaintiffs’ newspapers and to receive them at a certain price and sell them at a stated price; the defendants were to engage as their own employees, a staff of carrier newsboys for whom the defendants were completely responsible; they were to make all legal payroll deductions, cover the employees with Workmen’s Compensation, and comply with other requirements with respect to employees. ’ ’ He also admits that in each of such contracts there is a clause reading as follows: “It is expressly understood that under this agreement, the ‘ News Dealer ’ occupies at all times the position of an independent contractor and controls all ways and means relating to the proper performance and completion of this agreement.”
Mr. G-atto contends, however, that notwithstanding that newsdealers under contract with the plaintiffs “were supposed to be independent contractors ”, the plaintiffs have insisted over *484 the years that the defendants perform certain services in addition to those required by the contract, and have supervised, directed and controlled the manner and means of operation of the defendants and imposed upon them burdensome duties, rules, regulations and requirements which, according to their counsel, “ either constitute a breach of the franchise agreements by the plaintiffs, as they are not properly duties and direction which may be imposed by the plaintiffs, or, in the alternative, result in the defendants acquiring the status of employees within the meaning of the Taft-Hartley Law.”
The reply affidavit of the plaintiffs’ director of circulation successfully refutes, in this court’s opinion, the defendants’ claim that the alleged control by the plaintiffs has rendered them, in fact, employees rather than independent businessmen. Upon the analysis made in such reply affidavit, it would seem that what the defendants characterize as onerous control inconsistent with an independent contractor status is in fact predicated upon provisions in the franchise contracts which have for their purpose the furtherance of the circulation of the newspapers for the mutual benefit of the parties to each contract.
Were the defendants merely employees, the plaintiffs would have the right to supervise them, but the defendants themselves deny that plaintiffs have any such right, thereby belying the existence of any employer-employee relationship between them. Indeed, in a pending arbitration proceeding, under an arbitration clause common to all of these “ News Dealer ” franchise contracts, the defendant, Leonard A. Pisciotta, the president of the New York Newsdealers Association, and who is represented in the arbitration proceedings by the same attorneys who appear in this action for the defendants, has taken the position in that proceeding that what now is asserted by defendants as evidence of an employer-employee relationship was no more than a breach of his franchise contract as an independent newsdealer.
Franchise contracts with newsdealers, including the defendants herein, provide for the sale of plaintiffs’ newspapers to each newsdealer at a fixed wholesale price, for distribution at a fixed retail price, the difference, after deducting expenses, 'to be retained by each newsdealer as the profit for his efforts. No newsdealer, according to the affidavit of plaintiffs’ director of circulation, has overtime pay, paid vacations, severance pay or sick leave, although plaintiffs offer such benefits to their own employees. Plaintiffs do not withhold, for income tax purposes, any moneys received by either the newsdealers or the *485 carriers. Each newsdealer is required to pay his own social security and file other reports that may be required of a self-employed businessman. He assumes the risk, expense and cost of all operations, pays the rent and maintenance for the premises occupied by him, keeps his own books and records, hires and fires his own carriers, and must apply in his own name to the Board of Education for a special permit allowing the carrier to work for him. Under his contract a newsdealer acquires a proprietary interest in the area designated for his operations, an interest which he may sell under certain conditions and which has been sold in the past in at least 58 instances. In fact, several of the defendants herein have sold their proprietary interests and purchased others, retaining the resultant profits.
On the present record the court is of the opinion that there has been a sufficient showing that these defendants are independent contractors rather than employees (Arnold Bakers v. Strauss, 1 A D 2d 604), and are not, therefore, subject to the Labor Management Relations Act, 1947 (§ 2, subd. [3]; U. S. Code, tit. 29, § 152, subd. [3]), which provides that “ The term ‘ employee ’ * * * shall not include ■ * * * any individual having the status of an independent contractor ”.
• The fact that the defendants call their association a labor union does not make it so. Nor is this court’s jurisdiction to restrain the unlawful acts enumerated in the complaint affected by the filing, subsequent to the service of the order to show cause herein, containing a stay, of unfair labor charges against the plaintiffs with the National Labor Relations Board. Aside from the fact that the Labor Management Relations Act specifically excludes independent contractors from its coverage, the United States Supreme Court has held in Garner v. Teamsters Union (346 U. S. 485, 488) that the act does not inhibit a State from exercising its historic powers over such traditionally local matters as public safety and activity threatening a probable breach of the State’s peace. It cannot be gainsaid that much of the activity of these defendants, as charged in the complaint and supported by the record herein, tends to a breach of the peace. Accordingly, the second branch of the defendants’ cross motion is denied.
While some of the details of the charges made by the plaintiffs in support of their motion for a temporary injunction have been disputed by the several affidavits submitted in opposition, the court is of the opinion that the over-all charges have been sufficiently established prima facie to entitle the plaintiffs to a temporary injunction. There can be no question that the *486 defendants, acting in concert through their association, have returned to the plaintiffs all newspapers previously distributed by them and refused to make any further distributions; newsdealers not associated with the defendants in their so-called “ strike ” have been approached; parents of carrier boys have been notified that they would not be covered by insurance and work permits and newspapers already delivered to the doorsteps of subscribers have been picked up by some of the defendants and returned to the plaintiffs. A realistic appraisal of the proof submitted by both sides can lead to no other conclusion but that irreparable damage has been suffered and will continue to be suffered by the plaintiffs as the result of their inability, through the defendants’ interference, to get their newspapers into the hands of subscribers in time. Money damages, even if ascertainable, might fail to compensate the loss of the good will of the reading public, the prompt delivery of newspapers being the very essence of plaintiffs’ business. (S-M News Co. v. Simons, 279 App. Div. 364, 368, 371.)
The motion for a temporary injunction is accordingly granted as prayed for upon each plaintiff filing a surety undertaking in the sum of $1,000 on the settlement of the order hereon. Said order may provide for the placing of this action at the head of the calendar for immediate trial, subject to the approval of the justice presiding, upon five days’ notice following the service of the defendants’ answer.
Settle order.