OPINION OF THE COURT
Bernard F. McCaffrey, J.
The cardinal issue of injunctive relief under CPLR article 63 is involved in this matter under the new equitable distribution law, that is, to what extent may the plaintiff wife restrain, pendente lite, the defendant husband with respect to certain assets over which he has control.
It seems to this court that temporary restraining orders and preliminary injunctions in cases within the purview of the equitable distribution law will be sought routinely as a matter of course, simply to put a hold or freeze on things for purposes of maintaining the status quo. The question presented here appears to be — will or should such stays or injunctions be routinely granted.
The plaintiff wife moved by order to show cause seeking a “temporary restraining order” prohibiting defendant husband from alienating, transferring, hypothecating, or otherwise disposing of or encumbering any assets of defendant, or interest therein, except in the normal course of business or personal affairs, without the prior approval of *228 this court. Although labeled a “temporary restraining order” the relief actually sought is a preliminary injunction. Thus, a stay or “temporary restraining order” was granted in the order to show cause pending a hearing of the application. An oral application was made by the attorney for the plaintiff wife seeking to continue the stay pending the determination of the motion. This was opposed by the attorney for the defendant husband.
This decision is dispositive of the application for continuance of the stay, as well as the application for a preliminary injunction in the motion in chief.
There are actually two causes of action for divorce involved here. The first cause of action (Index No. 21799/80) was commenced by the husband on July 12, 1980, some seven days before the effective date of the equitable distribution law (L 1980, ch 645). The wife served an answer to the complaint; the answer contained no counterclaim. The second cause of action (Index No. 1901/81) was commenced by the wife on or about February 2,1981, some six months after the effective date of the equitable distribution law.
For purposes of clarification and easier understanding, reference herein to the parties shall simply be “husband” and “wife”.
The husband admits to a net worth of approximately $545,000, which includes cash ($10,000); securities ($178,000); 40% in business known as G & B Fasteners ($225,000); part interest in other businesses ($13,000); one-half interest in marital residence ($65,000); profit-sharing plan ($35,000); household furnishings ($7,000); gold-silver & coin collection ($5,000) and loan ($6,000).
At the time the order to show cause was signed the wife set forth certain activity on the part of the husband alleging that the husband was making transfers of certain of his assets so as to either divest himself of same, or to remove them from New York State. She contends that her husband’s assets would thereby become unavailable to whatever rights she may have to them, if she succeeds in her cause of action under the equitable distribution law (Domestic Relations Law, § 236, part B).
*229 In the order to show cause presented to the court four “transfers” were cited by the wife, they are as follows:
(1) transfer of $6,488 to a bank account in Florida on January 20, 1981;
(2) transfer of approximately $1,106 relative to purchase of two gold bars delivered to the husband’s sister in California on April 14, 1980;
(3) transfer of approximately $377 delivered to the husband’s sister in California on April 15, 1980; and
(4) transfer of $1,600 relative to purchase of silver delivered to the husband’s sister in California on May 14,1980.
In the husband’s opposition to the motion he showed that the total amount involved in the aforesaid transactions totaled approximately only 2% of his net worth. Furthermore, he established to the satisfaction of the court that the four “transfers” were not transfers to divest the husband of properties now within the State of New York.
As it turned out, the husband’s explanation regarding the aforesaid transactions led to another area in which the wife contended was new evidence of even greater transfers of the husband’s assets. The husband enclosed an affidavit of net worth dated February 10, 1981, which reflected a cash/short-term paper/marketable securities posture of approximately $13,000, whereas in a letter from the husband’s attorney to the wife’s attorney dated February 15, 1980, it was shown that the husband had in cash and bonds approximately $129,000. Thus, the wife contended that the husband had dissipated or transferred almost $120,000 between February 15, 1980 and February 10, 1981. However, the husband has established to the court’s satisfaction that a true comparison of his assets, as shown in the two statements, reflects a substantial increase in the value of his equity securities (i.e., up from $11,970 to $178,000). The husband also explained how his attorney’s letter of February 15, 1980 showed incorrect values for certain equity securities.
The court further finds that a very substantial percentage of the husband’s assets are New York based nonliquid, nontransferrable assets, such as the husband’s business *230 interest in G & B Fasteners, husband’s share of the marital residence, and his profit-sharing plan.
The wife relies heavily on Froehlich-Switzer v Switzer (NYLJ, Jan. 23,1981, p 4, col 3) in which the court stated, “The interests of justice, in an equitable distribution case, require that the assets of both parties not be significantly disturbed or re-arranged by being transferred, relocated or altered by loans, liens, or otherwise, until there has been a final determination by the court as to what the assets are and the rights of the respective parties thereto in terms of ownership and possession *** [accordingly, with the emergence of equitable distribution in New York’s legal firmament the financial status quo of both parties, as it existed at the time of the commencement of the action, should be maintained until and unless a court has a proper and fair opportunity to appraise the evidence presented.”
A review of the Switzer decision fails to reveal precisely under what circumstances the stay was granted. There is nothing in the decision itself which reflects exactly what the parties restrained were doing or threatening to do, or that immediate and irreparable harm would befall the party seeking the restraining order.
It is well settled that the grant of a temporary restraining order or preliminary injunction is a drastic remedy to be sparingly used. (Town of Porter v Chem-Trol Pollution Servs., 60 AD2d 987.) This court has no inherent power to grant temporary restraints. It derives its authority to grant such restraints solely by statute. (Maspeth Branch Realty v Waldbaum, Inc., 19 AD2d 833.)
The grounds upon which restraints can be granted are set forth in CPLR 6301, which provides as follows: “A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would *231 produce injury to the plaintiff. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had” (Emphasis supplied.)
Thus, by statute a temporary restraining order may only be granted where it appears that “immediate and irreparable injury, loss or damage will result”. A preliminary injunction may be granted only “where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done an act in violation of plaintiff’s rights respecting the subject of the action”. There appears to be no other statutory provision that governs the facts of the case at bar. Consequently, it appears that in order to be entitled to a temporary restraining order the wife has to show immediate and irreparable injury, and to be entitled to a preliminary injunction she must establish that the husband threatens or is about to do, or is doing, an act in violation of her rights.
Irreparable injury has been defined as “that which cannot be repaired, restored, or adequately compensated in money, or where the compensation cannot be safely measured.” (DeFuniak, Handbook of Modern Equity [2d ed], p 32.) A party seeking a temporary restraining order must establish that a real threat of irreparable injury exists by factual demonstration. Mere apprehension or conjectural injury, or injury of an inconsequential nature will not qualify as irreparable injury, or justify the issuance of a temporary restraining order.
Injunctions with reference to their terms of command may be classified as “prohibitory” or “mandatory”. A mandatory injunction is affirmative in character and directs the performance of an act, whereas a prohibitive injunction is preventive in character and forbids the continuance of a wrongful act, or the doing of some threatened or anticipated injury. (28 NY Jur, Injunctions, § 5.)
The injunction sought in the case at bar is not “mandatory” in nature; rather, it is prohibitive — to restrain. It is a provisional remedy sought which is temporary in nature, *232 which seeks to maintain a status quo. If the preliminary injunction results in giving the plaintiff all the relief which he or she could obtain after trial, the remedy should not be granted unless irreparable injury and a clear right to the ultimate relief is shown. (Mills Novelty Co. v Sunderman, 266 NY 32; Ornstein v 1440 Assoc., 11 Misc 2d 793.)
In passing upon the propriety of granting a temporary restraining order or a preliminary injunction, it has been stated as a general rule that such injunction order" should not be allowed where the plaintiff’s right is not free from doubt, or where the right to ultimate relief is doubtful, as where the plaintiff cannot show a clear right to relief. (People v Canal Bd. of State of N. Y., 55 NY 390; Park Terrace Caterers v McDonough, 9 AD2d 113; Franklin v Rumsey Realty Corp., 32 Misc 2d 57, 59.)
On the other hand, while undoubtedly, in the exercise of its discretion, the court may inquire that a clear right to the ultimate relief should be shown, based upon well-established principles, the rule that an injunction will not issue unless the right be clear and certain, which always applies to the issuance of permanent injunctions, is not the same with regard to interlocutory or temporary relief. (See People v Long Is. R.R. Co., 113 Misc 700, revd on other grounds 195 App Div 897.) In other words, the object of a preliminary or interlocutory injunction is to prevent irreparable injury pending the final ascertainment of the right, but not to determine the right itself. Thus, when the nature and purpose of a temporary injunction order are considered, it is evident that the court should give greater weight and consideration to the danger threatened and the consequences thereof, having first determined that the plaintiff, on his or her own papers, has established prima facie his or her right to the ultimate relief or judgment demanded, than to questions concerned with the probability of the plaintiff being able to prove his or her case; for the very purpose of a preliminary injunction is to preserve the status quo until a final determination can be had. (See Long Is. Daily Press Pub. Co. v Tomitz, 12 Misc 2d 480.) Moreover, it has been pointed out that where the measure of relief sought by the application for a temporary injunction is not the same as that sought by the judgment *233 demanded, and the purpose is only to preserve the status quo, the strength and clarity of plaintiff’s showing in support of the application as to his or her probabilities of success in the action, are not so important. (See 28 NY Jur, Injunctions, § 20.)
In terms of applying the remedy of the temporary restraining order or the preliminary injunction to matrimonial cases under the equitable distribution aspects of the law, as distinguished from the divorce proceeding itself, “fault” is at most a questionable factor. However, in any event, the preservation of the status quo would appear to require more consideration than the ability of a litigant to show a clear right to ultimate relief; rather, the court’s emphasis should be upon the question of immediate and irreparable injury, and whether or not there is a real or conjectured threat of same.
The court, because of the public interest, may exercise wider discretion in a matrimonial matter than in other actions or proceedings. However, there must be shown circumstances which afford a basis for the exercise of such legal discretion which can neither be arbitrary nor capricious. Such is not the case herein, as no special circumstances have been shown which would allow the court to go beyond the statutory framework for the granting of a temporary restraining order or preliminary injunction.
Under the circumstances presented in the case at bar, it is the view of this court that plaintiff is not entitled to the relief sought herein under CPLR article 63, in that there seems here to be no substantial evidence that defendant, who is a man with his business in the community, is about to make transfers which would impair plaintiff’s ability to obtain proper relief in this matter. (Glick v Glick, 5 AD2d 942.)
It is noted that in this case the order to show cause containing the stay was served upon the banks and stockbroker with whom the defendant had his accounts or did business. It is possible that in a case which warrants relief under CPLR article 63 the court could direct that the restraint be placed only upon the party involved in the litigation. However, even such a limitation would not *234 always be effective, particularly where an injunction or stay is tempered with terms such as “except in the normal course of business or personal affairs”. Bank officials and other third parties are in no way able to determine for themselves what constitutes a “normal course of business or personal affairs”; nor are they disposed to making such a determination. Thus, the result being that stockbrokerage, personal and corporate bank accounts of the party are, in effect, frozen, at least until such time as a further order of the court is obtained. However, in the interim, needless investment and/or substantial business losses could be incurred, as well as incurring adverse credit standing; and perhaps the greatest hardship of all would be inflicted upon a spouse’s business employees.
The court, based upon the foregoing conclusions, denies the plaintiff’s motion. The stay imposed in the order to show cause granted on February 5, 1981 in this matter is stricken.