OPINION OF THE COURT
Martin B. Stecher, J.
Plaintiff wife moves to enjoin the defendant husband from consummating his agreement to purchase a delicatessen restaurant.
The parties were married in 1947 and separated in 1978. Their four children are adults. Defendant husband brought an action for divorce in May, 1980, which was dismissed. Thereafter, in March, 1981, plaintiff instituted this action for divorce.
By affidavits and in her complaint, the plaintiff contends that the defendant has misused and converted her inheritance, the children’s trust accounts and the parties’ marital assets. Plaintiff claims that defendant has intermingled and confused their finances, motivated in great part to defeat her property rights, and particularly, her right to equitable distribution.
From defendant’s answers, to interrogatories and from his deposition testimony compelled by court orders, plaintiff learned that defendant entered into an agreement on November 5, 1981 to purchase a Brooklyn delicatessen restaurant for $430,000, about 30% of his acknowledged estate and an even more substantial part of his liquid assets. Plaintiff contends that this transaction is not only *596 improvident but is a further effort by defendant to prevent her from recovering her separate property and the marital property to which she is entitled.
Her concerns, at least in part, are supported by the record.
In his deposition the defendant acknowledged that he signed the restaurant contract on the strength of an oral representation as to sales; that he never saw a balance sheet, operating statement or even written evidence of sales. He admitted to having made no inquiry and having obtained no representations with respect to the creditors of the business. He testified that prior to entering into the contract, he had never met the prior owners, that he did not see the contract prior to the day it was signed, did not know who the draftsman was or who made the interlinear changes in the instrument.
The defendant testified that the business would be turned over to one Pearlman as manager. Pearlman, a present employee of the delicatessen, is without present managerial responsibilities, is of unknown address and even the spelling of his name is uncertain.
Perhaps, the most characteristic revelation was the defendant’s testimony that he never saw the lease for the rented premises, that he can’t recall the term or other terms of the lease although he believes it is for 11 years, and doesn’t know who the landlord is.
Both parties cite the same five cases with respect to the right of the plaintiff to an injunction and the right of the defendant to be free of restraint; Gramazio v Gramazio (108 Misc 2d 579); Bisca v Bisca (108 Misc 2d 227); Franzese v Franzese (108 Misc 2d 154); Froelich-Switzer v Switzer (107 Misc 2d 814); and Annexstein v Annexstein (NYLJ, April 24, 1981, p 7, col 2).
In Annexstein (supra), and particularly in Froelich-Switzer (supra), little was required to be shown by the applicant for an injunction on the theory that in order to give effect to the mandated equitable distribution of marital property (Domestic Relations Law, § 236, part B, subd 5, par c) injunctions should 'freely issue prohibiting distribution “except in the normal course of business or personal affairs” (Froelich-Switzer v Switzer, supra, p 815).
*597 The other cases cited adhered to the traditional view of injunction: it should not issue in the absence of a clear demonstration that it is needed to prevent “an act in violation of [the other party’s] rights respecting the subject of the action, and tending to render the judgment ineffectual” (CPLR 6301).
“Marital property” is, of course, with some notable exceptions,* property acquired from the time of the marriage to the service of the summons (Domestic Relations Law, § 236, part B, subd 1, par c). Such property, by statutory mandate “shall be distributed equitably between the parties”. (Domestic Relations Law, § 236, part B, subd 5, par c.)
The cases denying injunction (Gramazio v Gramazio, supra; Bisca v Bisca, supra; and Franzese v Franzese, supra) have however adopted the view that the mandate to the courts to distribute property “equitably” is satisfied if its value can be ascertained for eventual payment of a substitute award. Thus, in Franzese {supra, p 158), the court said “[t]o obtain injunction in the appropriate case, there should be an adequate showing that the moving party has a right to physical retention of the asset, or a part thereof, and that the other party has control and is about to exercise it to the movant’s lasting detriment.” The court suggests that the particular property to be distributed is of little moment so long as its value can be ascertained for eventual payment of the value of the share. In Gramazio (supra, pp 579-580) the court reasoned that any “restriction of [the husband’s] free right to dispose of [his half interest in a service station] if it becomes unprofitable could cause more harm than good in preserving marital assets. The ownership of substantial assets in joint names will adequately preserve the plaintiff’s share of the eventual marital distribution.”
The statute, as indicated above, provides that marital property shall be divided equitably between the parties but where “the court shall determine that an equitable distri *598 button is appropriate but would be impracticable or burdensome or * * * contrary to the law, the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties” (Domestic Relations Law, § 236, part B, subd 5, par e; emphasis supplied).
The defendant husband, relying on Franzese (supra) and Bisca (supra), insists that it is none of the wife’s business how he invests his money provided that he has the ability to pay her a distributive share. This argument falls afoul of the law in at least two respects.
For one thing, this investment of nearly $500,000 is a material invasion of defendant’s acknowledged assets and particularly of his liquid assets. Secondly, despite the reasoning in Franzese (supra) and Bisca (supra), it was not the intention of the Legislature to grant to the husband the discretion to determine that an in kind distribution “would be impracticable or burdensome or * * * contrary to law”. The statute mandates equitable distribution unless, the court determines the need for substitution. In short, while the court may decide that Mrs. Kriger must take delicatessen in lieu of cash, Mr. Kriger may not determine that substitution.
One of the difficulties inherent in these applications for injunctions is the fact that neither the Legislature nor the courts have addressed the true nature of “marital property”. In view of my holding above, entitling the wife to an injunction, defining “marital property” interests is not crucial to this decision. Nonetheless, the question should at least be considered even though an ultimate definition remains elusive.
No reported case which has thus far come to my attention has been required to consider “marital property” in a nondivorce or similar context. Yet there can be little doubt that the Legislature has created a heretofore unknown species of property right which comes into being, not with the service of the divorce summons, but with the marriage and acquisition of the first earned asset.
I can detect no intent on the part of the Legislature to have reimposed the inalienability of property which ended with the 1930 abolition of dower and curtesy (see Real *599 Property Law, art 6). Yet, using the language of the common law (see Walsh, Law of Property [2d ed], p 158, et seq.) an inchoate interest in the asset is acquired by the spouse without title immediately on acquisition and during “coverture”; it becomes “consummate” on service of the divorce summons awaiting only “admeasurement” in the decree of divorce.
To suggest, as the defendant does, that even after the service of the summons he is frqe to convert sound assets into questionable assets, destroying a spouse’s rights in the sound assets, all without interference from the courts, is to deny the very existence of marital property. To sustain such a view would require the courts to ignore the plain language of the statute which creates rights in property and not merely in the value of the property.

 The exceptions include property acquired by bequest, devise, descent, gift from a person other than spouse, compensation for personal injuries, property which by agreement is separate property, certain increases in the value of separate property, and property acquired in exchange for separate property (Domestic Relations Law, § 236, part B, subd 1, par d).