OPINION OF THE COURT
Ralph A. Boniello, III, J.
There are several applications before this court. A special proceeding was commenced pursuant to article 63 of the CPLR, by petitioner, Joseph Pedulla, as President of Niagara Falls Uniformed Firefighters Association, AFL-CIO, Local 714 (hereinafter Pedulla) under index number 111507 and plaintiffs, David Bathurst, as President of Niagara Falls Fire Department Officers Association, Local 3359, and Niagara Falls Fire Department Officers Association, Local 3359 (hereinafter Bathurst) under index number 111452.
However, in oral argument, Pedulla and Bathurst requested that their applications be converted to one pursuant to article 75 of the CPLR in conjunction with the application brought by petitioners, International Union of Operating Engineers, Local No. 463; Bricklayers and Allied Craftsmen International Union of America, Local 3; Niagara-Genesee and Vicinity Local No. 280 of the United Brotherhood of Carpenters and Joiners of America; International Brotherhood of Painters and Allied Trades Local Union No. 65; and the International Brotherhood, of Electrical Workers Local Union No. 237, collectively members of the Niagara County Building and Construction Trades Council, AFL-CIO; United Steel Workers of America, Local 9434-00; United Steel Workers of America, Local 9434-02; William Thomson, as President of the Niagara Falls Police Club, Inc., and the Niagara Falls Police Club, Inc., and John Soltys, as President of the Niagara Falls Captains and Lieutenants Association, and the Niagara Falls Captains and Lieutenants Association (hereinafter Unit Members) under index number 111588. The request was granted by this court.
*377 In response to the applications, the attorneys for the respondents/defendants under index numbers 111588, 111507 and 111452 have moved to dismiss the applications brought by petitioners Pedulla, Bathurst, and Unit Members.
On February 20, 2002, Paul Dziama, the Director of Human Resources for the City of Niagara Falls (hereinafter City), advised the employees that the rates for the City’s NOVA Plan had increased to $483.07 per month for single coverage and $1,069.64 per month for family coverage. In his letter to the employees, he stated that the collective bargaining agreements (hereinafter collectively CBAs or individually CBA) capped the City’s cost at $280 per month for single coverage and $630 per month for family coverage. The additional costs above the cap of $203.07 for single coverage and $439.64 for family coverage per month would be charged to the employees and deducted from their pay effective April 1, 2002, if they chose to remain in the NOVA Plan.
The CBAs provide that six health care plans be made available to the employees including the City sponsored PPO (HMO) Plan commonly referred to as the NOVA Plan. Pursuant to the interest arbitration award, there is a distinction among some of the CBAs between employees that were hired prior to December 7, 1998, the date of the award, and those who were hired after December 7, 1998. The latter must pay 25% of the health care premium during the first six months of employment if the NOVA coverage is selected. Petitioners Pedulla, Bathurst and Unit Members argue, however, with respect to all of its other union members, that there is no employee contribution for the NOVA Plan. In this respect, the issue is common with all of the proceedings before this court. The petitioners claim that the CBAs do not allow the City to charge any part of the NOVA premium to the employees and that it was never intended at the time of negotiation or subsequent thereto to allow such a charge.
As a result, petitioners Pedulla, Bathurst and Unit Members, representing the affected members/employees, requested a temporary restraining order (TRO) and a preliminary injunction pending arbitration. This court granted a TRO and heard oral argument with respect to the preliminary injunction on April 8, 2002.
It is well settled that the objective of a preliminary injunction is to maintain the status quo (Tucker v Toia, 54 AD2d 322 [4th Dept 1976]). However, a preliminary injunction is a drastic remedy and should only be used sparingly (Town of Porter v *378 Chem-Trol Pollution Servs., 60 AD2d 987 [4th Dept 1978]). The provisions of CPLR 6301 allow the issuance of a preliminary injunction “in any action.” An arbitration is not considered an action or a proceeding (see, CPLR 105 [b]; Brooks Sec. v Vanderbilt Sec., 126 Misc 2d 875 [Sup Ct, NY County 1985]). Further, the law is clear that when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract (Matter of Board of Educ. v Ambach, 70 NY2d 501 [1987]; Matter of Baran v Otterbein, 84 AD2d 928 [4th Dept 1981]). Accordingly, the court dismisses the summons and complaint filed by petitioners Bathurst and Unit Members as the CBAs between the City and petitioners clearly provide for a grievance and arbitration procedure. The court will determine the application for preliminary injunction under article 75 of the CPLR.
Pursuant to CPLR 7502 (c), Supreme Court can consider an application for preliminary injunction in connection with an “arbitrable controversy,” but only upon the ground that the “award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.”
In Cove v Rosenblatt (148 AD2d 411 [2d Dept 1989]), the controversy stemmed from a dispute between the parties that was subject to arbitration under the collective bargaining agreement. The employer alleged that certain members of the petitioner organizations had exceeded their allotments of employee organization leave time and sought a reimbursement of time or monetary compensation through payroll deductions from these allegedly offending members prior to an arbitrator’s resolution of the merits of the dispute. The Court found that the granting of the injunction was appropriate to maintain the status quo pending the decision of the arbitrator and “to preserve the efficacy of [a] potential arbitral award.” (Id. at 412 [internal quotation marks omitted].)
In Matter of Wagner Acquisition Corp. v Giove (250 AD2d 857 [2d Dept 1998]), the decision by the lower court to deny a request for preliminary injunction pursuant to CPLR 7502 (c) was reversed by the appellate court. The Appellate Division held that the focus should have been solely on whether the parties had made a valid agreement to arbitrate and not on the enforceability of the contract. (Id.) Furthermore, the court went on to note that once it was established that a valid agree *379 ment to arbitrate existed a preliminary injunction should have been granted. (Id.)
Based on a review of article 75 of the CPLR and applicable case law, the only issue is whether an arbitration award would be “rendered ineffectual” but for the preliminary injunction (see, CPLR 7502 [c]). The City argues that the controversy involves only money. Consequently, the employees that pay the additional charges that represent the portion of the health insurance premiums for the NOVA Plan that exceeds the cap would have an adequate remedy at law by the reimbursement of the additional health care costs should the City ultimately lose the arbitration. On the other hand, the petitioners assert that the monetary issue is superficial. They claim that the real injury would occur if the additional cost imposed upon employees would force them out of the NOVA Plan for another plan with lesser coverage. There seems to be a general consensus among the petitioners that the NOVA Plan has the broadest (most favorable) coverage among all of the plans. Consequently, they could lose a significant coverage benefit which was negotiated and is an integral part of their CBAs. They also argue that there may not be another opportunity to participate in the other plans through “open enrollment” which means that there may be some exclusions from coverage for preexisting health conditions. Additionally, petitioners argue that if they are successful in the arbitration, their members may not be able to return to the NOVA Plan and reinstate the same coverage as they now have. The petitioners also claim that the amount of the NOVA premium being charged by the City is inflated. The City acknowledges that it added additional costs to the base premium for inflation and reported but not incurred losses. These additional charges increase the base premium significantly. The court finds that health care coverage is a very important employee benefit and a loss of or reduction in coverage cannot be measured solely by monetary damages. Therefore, in order to maintain the status quo during the pendency of . the arbitration and not render the award ineffectual, the court grants a preliminary injunction pursuant to CPLR 7502 (c) on behalf of all of the petitioners herein and their respective members, including retirees (see, Matter of Guarini [Severini], 233 AD2d 196 [1st Dept 1996]; Matter of H.I.G. Capital Mgt. v Ligator, 233 AD2d 270 [1st Dept 1996]; National Telecommunications Assn. v National Communications Assn., 189 AD2d 573 [1st Dept 1993]; Suffolk County Patrolmen’s Benevolent Assn. v County of Suffolk, 150 AD2d *380 361 [2d Dept 1989]; Drexel Burnham Lambert v Ruebsamen, 139 AD2d 323 [1st Dept 1988]).
Notwithstanding, even if the traditional equity requirements are applicable to the injunctive relief under article 75 as the City claims, the court finds that the petitioners have met their burden. To be granted a preliminary injunction under article 63, petitioners herein must demonstrate (1) a likelihood of ultimate success on the merits; (2) irreparable injury if the preliminary injunction is not granted; and (3) that a balancing of the equities is in their favor (Gambar Enters. v Kelly Servs., 69 AD2d 297 [4th Dept 1979]; Niagara Recycling v Niagara, 83 AD2d 316 [4th Dept 1981]). A review of the CBAs and attached exhibits demonstrates that there is a likelihood of success on the merits. The showing of a likelihood of success on the merits required before a preliminary injunction may be properly issued need not be equated with the showing of a certainty of success (Sutton, DeLeeuw, Clark & Darcy v Beck, 155 AD2d 962 [4th Dept 1989]; Tucker v Toia, supra). Moreover, it is sufficient if petitioners make a prima facie showing of a “right to relief’ with the actual proof of the case left to the arbitration (Tucker v Toia, supra). As stated herein, there is nothing in the CBAs that specifically allows the City to charge a portion of the NOVA Plan health care premium to the employees. To the contrary, the prior testimony of David Fabrizio, the City Director of Human Resources at the time of the negotiations, and the affidavit of Anthony Restaino, the City Administrator at the time of the negotiations, reveal that it was never the intent of the City to charge a portion of the NOVA premium to the employees. In addition, the court finds that the loss of the NOVA Plan health care coverage may cause irreparable harm especially for those families that have significant health care problems. Irreparable injury has been defined as that which cannot be repaired, restored, or adequately compensated in money, or where the compensation cannot be safely measured (McLaughlin, Piven, Vogel v Nolan & Co., 114 AD2d 165 [2d Dept 1986]; Bisca v Bisca, 108 Misc 2d 227 [Sup Ct, Nassau County 1981]). The court has found that the loss of the NOVA Plan health care coverage cannot be recovered by an award of monetary damages alone since changing a health care provider may require a change in physicians and a course of treatment (see, Butski affidavit). It could also adversely affect the ability to access doctors, prescriptive medications, physiotherapy and other medical needs since copays and deductibles may be different among the plans. The NOVA Plan is the only plan that *381 covers dependents to age 25 and the petitioners claim that alone would result in 100 persons losing coverage. Under the circumstances, the irreparable injury to be sustained by the petitioners is far more burdensome than the harm to the City by the imposition of the preliminary injunction (Public Empls. Fedn. v Cuomo, 96 AD2d 1118 [3d Dept 1983]). Further, the balancing of the equities also favors the petitioners. A loss of or reduction in health care coverage outweighs any possible monetary loss to the City. The court notes that the City has not previously charged the employees for any portion of the NOVA health care premium, although the CBAs had been in force for a number of years. The City argues that the health care premiums only exceeded the cap limit in August 2001, but the only attempt by the City to reopen and renegotiate the health care portion of the CBAs, which it is entitled to do, occurred on or about February 28, 2002, approximately eight days after it had already advised the employees of the deduction to take effect on April 1, 2002.
Accordingly, petitioners Pedulla, Bathurst and Unit Members’ request for a preliminary injunction on behalf of their members, including retirees, pursuant to CPLR 7502 (c) is granted.