■ JACQUELINE E. WARREN, Respondent, v JAMES Z. WARREN, Appellant. — In an action to impress a trust on one half of the funds in a certain savings account, defendant appeals, as limited by his brief, from so much of an order of the Supreme Court, Dutchess County (Quinn, J.), dated September 4, 1979, as, after a nonjury trial, impressed a trust upon the sum of $18,500 and upon the interest accrued thereon. The appeal brings up for review so much of an order of the same court (Gagliardi, J.), dated January 31, 1977, as held that the action was not time barred. Order dated September 4, 1979 reversed insofar as appealed from, on the law, without costs or disbursements, plaintiff is awarded judgment impressing a trust upon the sum of $2,937.56 and upon the interest which has accrued on that amount from January 1, 1970 standing to the credit of defendant. The case is remitted to the Supreme Court, Dutchess County, for entry of an appropriate judgment in accordance herewith. This action revolves around a savings account held in the name of defendant, plaintiff's former husband. Trial Term, crediting the testimony of plaintiff, found the following to be the facts: Prior to their marriage in May, 1965, the parties agreed that they would pool their moneys and keep them in defendant's savings account for their mutual benefit. In keeping with this agreement, plaintiff, shortly after the parties' marriage, turned over to defendant for deposit into his savings account the savings she had accumulated prior to the marriage (about $400). Subsequently she withdrew the balance from her civil service retirement account (about $450) and turned it over to defendant. In addition, between 1965 and 1969, she regularly gave defendant for deposit a portion of her biweekly salary. In 1969, according to Trial Term's findings, the "savings account became the subject of argument between the parties. In one conversation, defendant referred to that fund as 'his' account. Later, he apologized, stating that the money in the account belonged to both of them. He assured plaintiff that she had no need to worry. In June of 1969, the subject came up again, when plaintiff expressed concern over her lack of protection in the event that anything ever happened to him. As a result of this discussion, the parties agreed that the account should be made joint. To this end, defendant procured signature cards from the bank, and the parties each signed the cards to effect conversion of the account. Six months thereafter, plaintiff found the signed cards in a drawer in the house. Confronted with the cards, defendant promised to think about the matter but did nothing." Plaintiff reacted by opening her own savings account on December 12, 1969 and by discontinuing her practice of giving defendant money for deposit into his account. She did, however, continue to pay a portion of the household expenses. The parties separated in 1975 and were divorced the following year. The divorce decree awarded plaintiff, *inter alia,* weekly alimony and one half of the proceeds from the sale of the marital home. The portion of plaintiff's action which sought to establish an interest in defendant's savings account was discontinued without prejudice to the institution of a separate action for that relief. This action followed. Upon

these facts, Trial Term held that "equity must intervene to prevent defendant from abusing that trust and confidence [reposed in him by plaintiff] by retaining the whole of the fund to the detriment of his former spouse." The court impressed a trust in favor of plaintiff upon half of the $37,000 that was in the account at the time of the commencement of trial. We agree that a trust should be impressed, but we disagree with Trial Term regarding its extent. In our view, plaintiff is entitled to only half of the funds that were in the account at the time that she discontinued her practice of turning money over to defendant for deposit into the account. As a general rule, there are four prerequisites to the imposition of a constructive trust. As stated in *Sharply v Kosmalski* (40 NY2d 119, 121), these are: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment". The third element — that of a transfer — is absent in the present case after December, 1969, when plaintiff stopped turning money over to defendant for deposit into the account. While plaintiff may thereafter have continued to pay a portion of the household expenses, these payments are not considered a transfer to defendant absent a promise by defendant to reimburse her for them (see *Fischer v Wirth,* 38 AD2d 611; but see, generally, 2 Foster and Freed, Law and the Family, 1981 Supp, ch 30, esp p 705). Since plaintiff admits she did not contribute to the account after December, 1969, she is entitled to recover only half of the funds that were in the account as of that date and to the interest which has accrued thereon. Defendant raises the Statute of Limitations defense, contending that the cause of action arose in 1969 when he failed to change the account into a joint account, and that it was therefore time barred under CPLR 213 (subd 1) when this action was commenced on September 30, 1976. Special Term rejected this contention, holding that defendant did not breach his obligation until some time in 1976. We agree with Special Term that defendant did not repudiate his obligation until he failed to comply with plaintiff's demand, made during the course of the divorce proceedings, to reconvey to plaintiff a portion of the funds in the savings account. As noted above, the evidence revealed that defendant coupled his 1969 omission to make this account joint with assurances to plaintiff that the money in the account belonged to both of them, that at one point he signed the signature cards necessary to make the account joint, and that he ended the discussion of the issue with a promise to think the matter over. By these actions, defendant revealed that he continued to recognize his obligation to plaintiff. In view of these actions and in view of the fact that the account had, from the outset, been held solely in his name, defendant's noncompliance with plaintiff's request to make the account joint cannot be considered an unequivocal assertion of a right to sole ownership of the account (see *Pagano v Pagano,* 207 Misc 474, 477, affd 2 AD2d 756, mot for lv to app den 2 NY2d 708). Accordingly, the Statute of Limitations was not a valid defense. Hopkins, J. P., Titone, Gibbons and Cohalan, JJ., concur.