OPINION OF THE COURT
Joseph J. Sedita, J.
The new equitable distribution law (Domestic Relations Law, § 236, part B, subd 5) continues to generate a complex web of situations and issues which challenge the creative and analytical skills of the Bar and Bench. This case represents yet another example of the ongoing process of interpreting the operation of the new equitable distribution law and integrating its mandates into the larger matrix of New York law.
This is a motion to dismiss a supplemental counterclaim interposed by the defendant. Said counterclaim seeks damages for the alleged “conversion” of defendant’s property (silver, coins and other valuables) pursuant to a court-ordered restraining order.
The plaintiff wife commenced this matrimonial action in January of this year, and seeks an equitable distribution of the property of the marriage. Incident to the commencement of said action, she obtained an ex parte restraining order from Justice Norman J. Wolf, Justice of the Supreme Court. Said restraining order permitted her to lock *389 up and safeguard certain coins, bulk silver and other valuables stored at the marital home, and to freeze the defendant’s safe-deposit box and business bank accounts.
On the return date of the order to show cause (which contained the temporary restraining order), the defendant was represented by counsel, and was given a full opportunity to argue against the continuance of said restraining order. Justice Wolf declined to lift the restraining order.
In February of 1980, the defendant (through a new attorney) brought a new order to show cause seeking to lift Justice Wolf’s restraining orders. Justice Wolf permitted the restraining order to be modified so as to permit the defendant to take control of bulk silver (which had been already inventoried) and to dispose of said bulk silver so long as there was an accounting thereafter.
Following this second unsuccessful attempt to fully remove the restraining order, the defendant interposed the supplemental counterclaim which is the subject of this dismissal motion. Said counterclaim alleges over a million dollars in damages caused by a drop in the silver market during the period that the silver was nonalienable and for other damages to his business and reputation.
The issue then before this court is whether a properly obtained court order given to preserve and protect potentially distributable assets of this marriage can create a cause of action in tort for the party who has title and/or possession of those assets.
The law of torts embodies the rather simple notion that a person who is damaged because of a breach of his rights should be compensated or “made whole” for any damages resulting from that breach. Each person has a duty in society to avoid breaches of other persons’ zones of personal freedom and power which we refer to as their “rights”. A unique problem arises, however, in that bubbling cauldron of social interactions which we call society. The problem arises when individual zones of freedom and power (rights) overlap. In these cases the law must determine who had the “superior” right. A person whose lesser right is infringed by a superior right ordinarily has no claim for *390 damages (except in certain cases, for example, condemnation proceedings) because the superior right creates a corresponding duty to observe that superior right. The person exercising the superior right has not acted beyond his or her zone of personal freedom and is therefore not liable for a breach of duty to another. Upon these basic principles, the law seeks to adjust rights and fairly compensate those whose rights have been breached by a failure to observe the duties imposed by life in society.
In the case before us the defendant seeks damages for losses allegedly resulting from restrictions placed on his freedom to liquidate certain assets over which he asserts possessory and ownership rights. There is little question that these rights have been interfered with by the restraining order and its effectuation by the plaintiff.
The plaintiff wife, however, has been given by society (via the equitable distribution law) the potential right to a share of assets acquired during the course of their marriage. Any rights which the defendant may have in these assets will be subject to the superior right (established by the new law) of his spouse to an equitable share of those assets.
The process of “sorting out” hierarchies of competing rights is many times a difficult and complex enterprise within the framework of our adversarial system. We arm each combatant with certain procedural rights which may be exercised (so long as they are not abused) under judicial supervision. When properly utilized, they may be temporarily superior to a substantive right tentatively asserted at the inception and during the pendancy of litigation. Such is the case in the matter in issue before this court.
There is no question that any equitable rights, established by the plaintiff in this property, will be superior to defendant’s rights in these assets. There is also no question that the law has provided litigants with the procedural right to seek a court order restraining the alienation of disputed property. (See CPLR 6301.) If that right is sought in accordance with proper procedures, then the mandate (or right) of the court is superior to any rights asserted by the defendant. No cause of action accrues to the defendant *391 due to the application by plaintiff and assertion by the court of a superior right and authority over these chattels.
A cause of action in tort would only accrue if there was an “unjustified” or “improper” use of the legal process. (See Prosser, Torts [4th ed], § 15, ch 22, esp § 121.)
A conversion will lie only for an “unjustified” use of legal process. (Prosser, Torts [4th ed], § 15.) Three separate torts are included under the heading of “Misuse of Legal Procedure”. (See Prosser, Torts [4th ed], ch 22.) Two of these torts (malicious prosecution and wrongful civil proceedings) require a favorable termination before a cause of action may be established. (See Loeb v Teitelbaum, 77 AD2d 92; Liffman v Booke, 59 AD2d 687; Racoosin v LeSchack & Grodensky, 103 Misc 2d 629; Budgar v State of New York, 98 Misc 2d 588.)
The third tort is the only possible category under which this cause of action might be established. This is the tort of abuse of process.
In an early Court of Appeals case defining the essence of the tort of “abuse of process”, the court speaking through Justice Hubbs stated (Hauser v Bartow, 273 NY 370, 374): “The tortious character of the defendant’s conduct consists of his attempt to employ a legitimate process for a' legitimate purpose in an improper manner, and this point must be clearly shown by the plaintiff to entitle him to maintain his action. *** It must further appear that he did something in the use of the process outside of the purpose for which it was intended. * * * Everyone has a right to use the machinery of the law, and bad motive does not defeat that right.”
The documents before this court fail to establish anything more than that the plaintiff utilized the legal process available to her to protect potential equitable rights she might have in these assets. The legal process was used precisely for the purpose intended and no other purpose has been shown or alleged. (See Coopers & Lybrand v Levitt, 52 AD2d 493; Metromedia v Mandel, 21 AD2d 219, affd 15 NY2d 616.)
Justice Wolf made the decision to grant this relief and absent some showing or allegation of wrongdoing in seek *392 ing that relief, this court will not implicitly “second guess” Justice Wolf’s decision. There has been no sufficient basis presented to sustain the maintenance of this counterclaim.
Accordingly, this motion is granted.