BONNIE LEIBOWITS, Respondent, v PETER LEIBOWITS, Appellant, et al., Defendant.

Second Department, May 16, 1983

APPEARANCES OF COUNSEL

*Marshall, Bratter, Greene, Allison & Tucker (Eleanor B. Alter, Susan L. Lesinski* and *Howard P. Roy* of counsel), for appellant.

*Finkelstein & Robins (Miriam M. Robinson* and *Philip Sherwood Greenhaus* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

Section 234 of the Domestic Relations Law provides the authority for the issuance of an order restraining disposition of marital assets during the pendency of a divorce action. Therefore, compliance with the formalities and

jurisprudential requirements of CPLR article 63 relative to preliminary injunctions is not a prerequisite to an order of restraint.

During the current action, the defendant husband moved for an order directing his wife to account for and turn over to him the contents of a safe deposit box which she controlled and which contained securities and other assets, some of which were jointly owned and others of which the husband owned individually. In opposition, the wife contended that while her husband was entitled to the return of his inherited property, the remaining assets constituted marital property to which he was not entitled. Special Term ordered the plaintiff to account for the assets in the box and give the husband his inherited assets. However, the court denied the turnover motion insofar as it related to marital property on condition that the wife not dispose of the property during the litigation. Despite the wife's failure to move for affirmative relief on her own behalf, the court also issued an order restraining the husband from disposing of marital property within his control. It is that directive which the husband now challenges as baseless in the absence of a motion for a preliminary injunction pursuant to CPLR article 63.

We conclude that Special Term erred in its *sua sponte* restraint of the husband's disposition of marital property. Due process requires written notice from the moving spouse that he or she seeks possession of marital assets or a restraint on their disposition. Thus, the portion of the order restraining the husband from disposing of marital property should be deleted.

However, the portion of the order that restrained the wife from disposing of marital property as a less drastic alternative to the requested turnover application was a proper exercise of discretion and authority under section 234 of the Domestic Relations Law. The pertinent portion of that section provides: "In any action for divorce * * * the court may * * * make such direction, between the parties, concerning the possession of property, as in the court's discretion justice requires having regard to the circumstances of the case and of the respective parties." The section derives from section 1164-a of the former Civil

Practice Act which applied to actions for separation and was enacted to decide the right of possession of real property held by the husband and wife as tenants by the entirety. Recognizing that a separation judgment does not terminate a tenancy by the entirety, the Legislature adopted section 1164-a in an effort to prevent the harm that could be caused by a vindictive spouse who attempted to transfer or encumber his or her interest in such property so as to harass the other spouse (*Kahn v Kahn,* 43 NY2d 203, 208; 1953 Report of NY Law Rev Comm, pp 485-486).

Section 234 of the Domestic Relations Law extended the judicial power over the possession of property to encompass both real and personal property. The power was clearly designed to be utilized without regard to the state of title (1963 Report of Joint Legislative Committee on Matrimonial and Family Law, NY Legis Doc, 1963, No. 34, pp 81, 84-85; 2 Foster-Freed, Law and the Family, § 22:37, p 103), and it gives the court "broad and flexible control" over the possession of property (Siegel, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 234, p 33, 1982-1983 Pocket Part), by providing in-kind support through possession of real (*Scampoli v Scampoli,* 37 AD2d 614), or personal property (*Troiano v Troiano,* 87 AD2d 588; *Silbert v Silbert,* 22 AD2d 893, affd 16 NY2d 564), by excluding one spouse from premises occupied by another (*Minnus v Minnus,* 63 AD2d 966), or by restraining transfers of property *pendente lite* (*Zeeve v Zeeve,* 44 AD2d 838; *Weaver v Weaver,* 37 AD2d 614).

The section 234 power to direct one party to deliver possession to the other necessarily includes the power to prevent a party from frustrating such delivery by improper disposition of assets. In these days, that power of restraint is vital to meaningful enforcement of the equitable distribution statute. Not only is this conclusion consistent with the new law's recognition of the parties' "economic partnership" (Governor's Approval Memorandum, McKinney's Session Laws of NY, 1980, p 1863), but it has support in the State's abiding interest in family relationships (*Fearon v Treanor,* 272 NY 268; *di Lorenzo v di Lorenzo,* 174 NY 467), especially in allocating the economic burdens so that members of the former family group are not "destroyed by

crushing economic and psychological pressures" (*Phillips v Phillips,* 1 AD2d 393, 397, affd 2 NY2d 742). Absent the authority provided in section 234 of the Domestic Relations Law, a spouse who seeks to prevent the dissipation of marital assets would be compelled to obtain a preliminary injunction pursuant to CPLR article 63. Such injunctive relief would, in turn, require the moving party to post an undertaking and establish the probability of success. Considering the often great disparity between the financial capacities of spouses, the need to comply with article 63 would chill the efforts of the relatively impoverished to prevent the more affluent from frustrating justice by disposing of marital assets.

Accordingly, the order should be modified by deleting the provision restraining the husband from disposing of marital property during the litigation. As so modified, the order should be affirmed insofar as appealed from.

O'CONNOR, J. (concurring). Defendant husband questions Special Term's authority to issue a restraining order in protecting marital property pending equitable distribution in an action to dissolve his marriage to plaintiff. I conclude that section 234 of the Domestic Relations Law, which provides for *pendente lite* orders changing possession of property as between spouses, empowers the court in certain circumstances to restrain acts prejudicial to a spouse's equitable distribution expectancy without strict compliance with the procedural requirements for injunctive relief under CPLR article 63. In reaching this conclusion, however, I believe it is appropriate to comment further on the nature of equitable distribution and the availability of certain provisional remedies under this new law.

THE FACTS

In this action for divorce the husband (hereafter defendant) moved at Special Term, by notice of motion dated March 23, 1981, for an order directing plaintiff wife to account for and to turn over to him the contents of a safe deposit box that was allegedly held jointly but was under her sole control. The box allegedly contained securities, commercial paper and passbooks, which were particularly identified in his affidavit. Some of the papers were in his name alone, and some were in their joint names. Some of

these papers allegedly represented property inherited from his mother. Defendant sought possession of all the papers pending judgment on the ground that plaintiff's refusal of access to, or information about, the property had been unreasonable and demonstrated her unfitness to act as custodian of such property. He also stated that he had lost income when plaintiff had refused to reinvest a certificate of deposit in their joint names because she wanted the account divided equally, and that her net worth statement filed in this action demonstrated that she had transferred assets from their joint accounts into her own accounts.

Plaintiff opposed the application but sought no affirmative relief of any sort. In her affidavit, she stated that she had turned over that portion of the contents of the safe deposit box that she believed constituted inherited and therefore "separate" property as defined in section 236 (part B, subd 1, par d) of the Domestic Relations Law, to which she had no rights under the equitable distribution amendments to that statute (L 1980, ch 281, § 9). Plaintiff refused, however, to turn over the remainder of the contents on the ground that it was "marital" property under the new law (Domestic Relations Law, § 236, part B, subd 1, par c). She alleged that the bulk of the marital property was under defendant's sole control and that it was worth several million dollars, including real estate ventures; her own net worth statement indicated that she controlled more than a quarter million dollars in liquid assets. Plaintiff also argued that defendant had ceased supporting her and that he had lent substantial sums of money out of the marital property to a woman named in this action as "corespondent". Defendant replied that until judgment plaintiff had neither a claim to nor a vested right in assets in his sole name, and that plaintiff failed in her papers to state any ground authorizing interference with his use of such assets.

Special Term directed plaintiff to account to defendant for the assets or documents in the safe deposit box and to turn over to defendant any inherited assets; however, the court declined to direct a turnover of the remainder of the contents of the box on condition "said property is not disposed of in any way during the pending litigation". The

court reasoned that title to such property was no longer the controlling factor under the Equitable Distribution Law. The court further directed that its prohibition against any disposition of marital property "also applies to any marital property presently being held by the defendant-husband".

THE ISSUES

Defendant appealed from the order to the extent that the court denied a turnover of the documents held jointly or in his sole name and to the extent that it *sua sponte* issued an injunction restraining him from disposing of marital property during the pendency of this litigation without compliance with the procedural requirements specified for injunctive relief in CPLR article 63.

I agree with defendant's argument that the record did not justify Special Term's discretionary issuance of a restraining order against him, particularly in view of the fact that plaintiff had in no manner asked for such relief. I do not agree with his argument that Special Term erred in failing to direct a turnover of property held jointly or in his name alone because I believe that the court did not abuse its discretion, on this record, in limiting defendant's relief to a restraining order against plaintiff's disposal of those assets.

Defendant, however, not only objects to Special Term's exercise of its discretion under the circumstances disclosed on the record, but also contests its power to exercise such discretion. Defendant, in short, calls into question the very nature of his spouse's claim to marital property prior to a judgment dissolving their marriage, and the availability of any prejudgment equitable remedy invoked in aid of such claim against a spouse holding title to the property.

In my opinion the Equitable Distribution Law did not create any legal or beneficial interests in marital property prior to the expected judgment dissolving the parties' marriage. I conclude, however, that the law certainly created an expectancy in such property. I further conclude that section 234 of the Domestic Relations Law — which antedates the new law — serves independently of CPLR article 63 as a practical in personam remedy in the nature of an injunction against a vindictive spouse to protect this expec-

tancy in marital property susceptible of actual or constructive possession by the aided spouse.

THE LAW

The legislative history of the equitable distribution amendments to the Domestic Relations Law is of little help in ascertaining the intended nature and extent of spousal claims to marital property prior to a judgment dissolving a marriage.

The legislative sponsor's memorandum in support of the amendments complained: "Present law retains the obsolete common law property system which places undue emphasis on how title is held. The law of alimony has been instituted to compensate for the unfairness of the common law marital property system" (11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B-7). All three branches of government have agreed that the new law recognizes marriage as a "partnership", but have been silent about the existence of any prejudgment rights based on this analogy (see legislative memorandum in support, 11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B-8; Governor's Approval Memorandum, McKinney's Session Laws of NY, 1980, p 1863; *Forcucci v Forcucci*, 83 AD2d 169, 171; see, also, 2 Foster-Freed, Law and the Family [1983 Cum Supp], § 33:4-A, pp 837-838). The legislation itself merely provides, first, for a *determination* of rights in separate and marital property in an action in which the relief granted is divorce or dissolution, annulment or declaration of the nullity of a marriage (or in a proceeding to obtain a distribution of marital property following a foreign judgment of divorce), and second, for a *disposition* in the final judgment of the rights as thus determined (Domestic Relations Law, § 236, part B, subd 5, par a; see 24 Am Jur 2d, Divorce and Separation, § 939, pp 1074-1075).

Thus the only recognition of marital property is to be found in this law that created it as an ancillary remedy to the dissolution of a marriage. Professor Foster, long a dominant force in the movement to reform marital property law in this State, takes no firm position on whether a spouse has any right in or to marital property, as such, prior to such judgment:

"[I]t should be noted that the indicia of 'marital property' arises [*sic*] only in the event of divorce or annulment. They are not involved in legal separation actions. And the provisions in that regard have no application to inheritance where the marriage is terminated by death. The Estate, Powers, and Trust Law remains in force and effect. The likely view is that there is no spousal interest in the separate[ly held] property of the other party unless and until equitable distribution is made upon divorce. It does not appear, moreover, that there is an inchoate interest or 'expectancy' with regard to 'separate[ly' held] property. Probably, subject to the usual rules regarding fraud, the owner of separate[ly held] property may sell, encumber, or dispose of it until the judgment of divorce, unless such is done as a fraud on the other party. In short, it is likely that the indicia of marital property does [*sic*] not impinge upon separate[ly held] property before the divorce decree." (Foster [ed], A Practical Guide to the New York Equitable Distribution Divorce Law, p 56; see, also, 2 Foster-Freed, Law and the Family [1983 Cum Supp], § 33:4-A, pp 838-839.)

Similarly, current analyses of the tax consequences of equitable distribution, i.e., whether distribution is a taxable event or merely the division of property between ·co-owners, assume that claimed prejudgment interests are actually nothing more than expectancies until the judgment transforms them into vested interests by, in effect, redistributing the prejudgment legal and beneficial interests between the spouses (see *Wiles v Commissioner of Internal Revenue*, 499 F2d 255, cert den 419 US 996; 11C Zett-Kaufman-Kraut, NY Civ Prac, § 77.02 [4], [5]; § 77.03 [1]; § 77.05 [3], [4]). Professor Foster suggests, however, that recognition of prejudgment equitable interests in marital property might result in such favorable tax consequences to the spouse who had held the property separately as to tempt the courts to exceed the limited legislative purpose of equitably recognizing and· distributing pre-existing interests only upon judgment: "If it can be established that all family assets (other than those specified as 'separate' in subdivision 1) are to be regarded as 'marital property' before the divorce, the transfer upon divorce may

be taken out of *United States* v. *Davis* (370 U.S. 65), as was done in *Collins* v. *Comm'r* (412 F. 2d. 211) and *Imel* v. *United States* (375 F. Supp.1102 [affd 523 F2d 853]), so that there is no capital gains tax on the transfer. It remains to be seen whether the tax consequences of *Davis* may be avoided and the result hinges in large measure upon the wording of the new equitable distribution law. Perhaps an amendment to the law will be necessary to achieve the desired tax consequence, if the present wording does not permit it." (Foster [ed], A Practical Guide to the New York Equitable Distribution Divorce Law, pp 56-57; 2 Foster-Freed, Law and the Family [1983 Cum Supp], § 33:4-A, pp 838-839; see, also, 11C Zett-Kaufman-Kraut, NY Civ Prac, § 77.06.)

In my opinion the courts should not exceed their legislative mandate by recognizing, expressly or impliedly, any rights or remedies not clearly authorized by, or necessary to the operation of, the Equitable Distribution Law.

As noted in the legislative sponsor's memorandum, New York's common-law marital property system — if it could be called a system — was shared by only a small minority of sister jurisdictions when the Equitable Distribution Law was adopted. A substantial majority of jurisdictions by that time had adopted equitable distribution regimes, and a substantial number had long operated under community property principles (see Freed, Equitable Distribution in the Common Law States: A "Bird's Eye" View, Economics of Divorce [ABA Section of Family Law], pp 21-22; 24 Am Jur 2d, Divorce and Separation, § 926, pp 1054-1056).

With the experiences of such States to draw upon, the Legislature confronted New York's static system under which the courts had been compelled to adhere strictly to the technical rules of law in distributing the property of parties to a marriage upon its dissolution (see *Kahn v Kahn,* 43 NY2d 203). The courts went no further in ameliorating the rigor of the common law or in supplying the defects of equity than a limited application of the constructive trust doctrine (see, e.g., *Warren v Warren,* 82 AD2d 881; *Markland v Markland,* 67 AD2d 940, mod on other

grounds 48 NY2d 851; *Fischer v Wirth,* 38 AD2d 611; see, also, 2 Foster-Freed, Law and the Family [1983 Cum Supp], § 30:2, pp 739-740; § 30:8, pp 763-767).

Furthermore, this dissociation of property interests from marital status was extended to alimony, which was analyzed not as an interest in property but as a statutory obligation (see, e.g., *Romaine v Chauncey,* 129 NY 566). Until modern times, however, alimony had been awarded out of the husband's property, defined to include his interest during coverture in his wife's estate (see 26 Am Jur, Husband and Wife, § 39, p 669), as incident to an ecclesiastical decree of separation from bed and board or of restitution of conjugal rights. Alimony was an allowance out of, not an estate in, the husband's property (17 Am Jur, Divorce and Separation, § 665, p 730). An abandoned wife found no succor in the old law courts, although her creditors had an action against the husband for necessaries on the theory that she had been sent out into the world with his general credit. Chancery's role in most jurisdictions was limited to reaching her equitable property, i.e., that held by her husband during coverture prior to the married women's property acts (see 2 Foster-Freed, Law and the Family, p vii; 2 Story, Commentaries on Equity Jurisprudence [13th ed], §§ 1422, 1423-a, 1424, pp 756-758). The jural nexus between his control of her property and his alimony obligation has long been sundered in American jurisdictions, including this State (see *Erkenbrach v Erkenbrach,* 96 NY 456; 27 Am Jur, Husband and Wife, § 402, pp 9-10). Available in New York only pursuant to statute (*Weintraub v Weintraub,* 302 NY 104), alimony was awarded to permit the wife to maintain her accustomed standard of living achieved during marriage in accordance with the husband's duty to support her; under the new law, alimony is replaced by maintenance, which is awarded to "meet the reasonable needs of a party" in rehabilitation of that spouse to achieve independence upon roughly equal division of family assets (Domestic Relations Law, § 236, part B, subd 1, par a; see legislative sponsor's memorandum in support, 11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B-8; Foster [ed], A Practical Guide to the New York Equitable Distribution Divorce Law, p 53).

In reformulating these economic incidents of the marital status, the Legislature decided against adoption of a community property system, under which spousal interests in marital property during marriage have been characterized not as expectancies but as present, equal and subsisting interests — including possession, if not also the civil law administrative right of "management" (see De Funiak and Vaughn, Principles of Community Property [2d ed], § 102, pp 258-259; §§ 105-110, pp 261-269; § 151, pp 360-365; Evans, The Ownership of Community Property, 35 Harv L Rev 47). But declaring that economic incidents of a proprietary nature attach during marriage by virtue of status would have confronted the Legislature with a host of issues concerning not only taxation but also creditors' rights, control of the property, pursuit of property into the hands of third parties, testamentary disposition of such property, and fiduciary obligations (see De Funiak and Vaughn, Principles of Community Property [2d ed], § 94, pp 234-235). The Legislature had before it the sorry history of the judicial and legislative struggle in community property States to engraft upon civil law theories of community property the common-law principles underlying just one of these inevitable issues — creditors' rights (see De Funiak and Vaughn, Principles of Community Property [2d ed], § 162, pp 384-389; §§ 182, 183, pp 430-435). What the Legislature enacted was a series of amendments to the Domestic Relations Law that speak to a recognition of shared interests and a distribution of such interests only upon judgment.[1]

Under such circumstances, it would not be prudent for the courts to infer that prejudgment property interests are created under equitable distribution. We should not be so bold as to venture where the Legislature has so recently declined to go.

1. By chapter 187 of the Laws of 1981 (EPTL 6-6.1 *et seq.*), the Legislature adopted the Uniform Disposition of Community Property Rights at Death Act in order to recognize and define the rights of married persons in property acquired while they resided in a community property State after they have moved to a noncommunity property State. This addition to the EPTL basically codifies existing New York law, although it also exempts the deceased spouse's community property share from the right of election given under EPTL 5-1.1. (See Rohan, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 6-6.1, p 56, 1982-1983 Pocket Part.)

Furthermore, as evidenced by the frustration of their efforts to avoid the harsh consequences of title theory under the former provisions of the Domestic Relations Law (see, e.g., *Kahn v Kahn,* 43 NY2d 203, *supra*), the courts cannot expand their power or jurisdiction in the guise of devising or making new process or forms of proceedings under subdivision 3 of section 2-b of the Judiciary Law. Courts possessed of equitable power no longer inaugurate attacks on legal doctrines; instead, they confine themselves for the most part to the application of substantive and procedural rules established by statute or evolved incrementally by judicial precedent (see *Seif v City of Long Beach,* 286 NY 382, mot for rearg den 287 NY 836; *National City Bank of N.Y. v Gelfert,* 284 NY 13, revd on other grounds 313 US 221; *Empire Eng. Corp. v Mack,* 217 NY 85; *Hunt v Hunt,* 171 NY 396; *National Tradesmen's Bank v Wetmore,* 124 NY 241; *Thomas v Musical Mut. Protective Union,* 121 NY 45; *Guest v City of Brooklyn,* 69 NY 506; *DeSimone v Ogden Assoc.,* 88 AD2d 472; 1 Pomeroy, Equity Jurisprudence [5th ed], § 47, pp 61-62; § 54, p 71; 1 Story, Commentaries on Equity Jurisprudence [13th ed], §§ 8-24, pp 8-19; Clark, Principles of Equity, § 15, pp 18-20; McClintock, Handbook of the Principles of Equity [2d ed], § 4, pp 10-12; Milson, Historical Foundations of the Common Law, pp 85-87). I know of no principled distinction that would permit the courts to except the Equitable Distribution Law from the ordinary operation of this general principle (see *Lesman v Lesman,* 88 AD2d 153, 160 [no property interest in spouse's license to practice medicine]).

Although the equitable jurisdiction of the Supreme Court of the State of New York, being constitutional rather than statutory, cannot be curtailed by an act of the Legislature (*Kay-Fries, Inc. v Martino,* 73 AD2d 342, 348, app dsmd 50 NY2d 1056, mot for lv to app dsmd 51 NY2d 994), even that most elastic of provisional remedies — the interlocutory injunction — is not formulated and issued in the court's unfettered exercise of inherent power, but only as an incident to the general jurisdiction of the court, and it must find its warrant in the governing statute as a condition precedent to its issuance (*Fellows v Heermans,* 13 Abb Prac [NS] 1, 7, 9; see *Bachman v Harrington,* 184 NY 458;

*Litwa v Litwa,* 89 AD2d 581; *Maspeth Branch Realty v Waldbaum, Inc.,* 19 AD2d 833; but see *Matter of Ohrbach v Kirkeby,* 3 AD2d 269; *Ocorr v Lynn,* 105 Misc 489). Deference to statutes regulating remedies is particularly appropriate if they were enacted to correct abuses such as, for example, the obtaining of injunctive relief without the giving of an undertaking to protect the enjoined party from injury (see *City of Yonkers v Federal Sugar Refining Co.,* 221 NY 206; *Hart v Mayor, Aldermen & Commonalty of Albany,* 3 Paige Ch 381).

DISCUSSION

It is the application of these principles regulating the courts' power to issue injunctive relief to protect spousal claims to equitable distribution of marital property during litigation that has split our nisi prius courts, the majority of which have adhered to the traditional rule that such relief is extraordinary (see *Kriger v Kriger,* 115 Misc 2d 595, and cases cited therein; see, also, *Steinberg v Steinberg,* 87 AD2d 782; *Kramer v Kramer,* 111 Misc 2d 388; *Hertzler v Hertzler,* 109 Misc 2d 16). In *Kriger v Kriger,* Special Term (STECHER, J.), rightly complained (p 598): "One of the difficulties inherent in these applications for injunctions is the fact that neither the Legislature nor the courts have addressed the true nature of 'marital property'."

The case under review well illustrates the problem. Here defendant husband was unconditionally restrained from disposing of "marital property" under his control during this litigation for a divorce. Presumably Special Term meant to include all property "acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held", as specified in the Domestic Relations Law (§ 236, part B, subd 1, par c). But this relief, awarded *sua sponte,* was not authorized by any of the provisional remedies provided in the Domestic Relations Law (§ 233 *et seq.*) or in any other statute.

No other orders had yet been made by the court; therefore, the court's order under review was not made by virtue of its authority to sequester property, require the posting of

security or direct a wage deduction pursuant to sections 243 and 244 of the Domestic Relations Law, which are available only upon default in honoring support orders.

Since the record did not disclose whether any or all of the marital property under defendant's control was susceptible of either actual or constructive possession by plaintiff, nor whether the interests of third parties would be prejudiced, the order was not made pursuant to the court's authority to direct a change of possession of property under section 234 of that statute.

Nor, in the last analysis, was the order made pursuant to the court's inherent residual power to grant the extraordinary remedy of a preliminary injunction as regulated by CPLR article 63. Apart from the issue of whether plaintiff's circumstances merited such gratuitously awarded relief, the order was defective in having been made without the necessary notice to defendant and in failing to require the posting of an undertaking by plaintiff as specified in CPLR 6311 and 6312.

Thus, there existed no basis in law for Special Term's restraining order against defendant's exercise of dominion over the parties' marital property.

Nevertheless, I do find warrant for Special Term's refusal to direct plaintiff to turn over marital property actually or constructively in her possession by virtue of her exclusive control of the parties' safe deposit box, on *condition* she refrain from disposing of its contents. That warrant is section 234 of the Domestic Relations Law, which authorizes the court, either *pendente lite,* in the judgment or after judgment, to "make such direction, between the parties, concerning the possession of property, as in the court's discretion justice requires having regard to the circumstances of the case and of the respective parties". If Special Term could have properly directed a change of possession of the marital property in the safe deposit box from plaintiff to defendant under section 234, then Special Term, in the exercise of sound discretion, certainly had the power to provide for the less drastic remedy of a restraining order, which operated by denying the full relief of a

turnover of the property upon an appropriate condition, namely, that plaintiff refrain from disposing of the property during the litigation (see *Zeeve v Zeeve,* 44 AD2d 838).

My premise in this analysis of the section 234 remedy is, of course, that at no point prior to judgment does the new law itself create any contingent or present vested interests, legal or equitable, by virtue of the parties' marital status or prior to a judgment dissolving their union. I therefore completely disagree with Special Term's dicta in *Kriger v Kriger* (115 Misc 2d 595, 598, 599, *supra*), that "there can be little doubt that the Legislature has created a heretofore unknown species of property right which comes into being, not with the service of the divorce summons, but with the marriage and acquisition of the first earned asset", and with that court's analogy of the expectancy of marital property to the inchoate right of dower (see, also, *Matter of Felisa L. D. v Allen M.,* 107 Misc 2d 217; *Benson v Benson,* 108 Misc 2d 892). I proceed consistently under the assumption that the spouses' respective claims to each other's separately held property under the rubric of marital property continue to be, as they were prior to the new law, mere expectancies analogous — perhaps — to those of heirship (see *Newman v Dore,* 275 NY 371), but not to the inchoate, contingent right of dower (Real Property Law, § 190; RPAPL 1911; see *Matter of City of New York* [*Cropsey Ave.*], 268 NY 183; *Clifford v Kampfe,* 147 NY 383; *Kelly v Harrison,* 2 Johns Cas 29) or of testamentary substitutes in an elective share (EPTL 5-1.1, subd [b]), and certainly not to the present, vested rights of partnership (Partnership Law, §§ 51, 52; cf. *Gleason v Gleason,* 26 NY2d 28, 40-41).

The legislative history of section 234 and its predecessors, however, clearly demonstrates that the Legislature was deeply concerned that one charged with his spouse's support during or after a matrimonial action be prevented from oppressing the spouse by invoking the technical rules of property. Decisions construing provisions in the former Civil Practice Act and Code of Civil Procedure with respect to the support obligation had split on the issue of judicial power to award exclusive possession to one spouse in the marital home (compare *Cox v Cox,* 266 App Div 38 [property held by the entirety], with *Garson v Garson,* 271 App

Div 961 [sole lessee of real property directed to confer possession on spouse], discussed in 1953 Report of NY Law Rev Comm, pp 490-492). Under the technical rules of property, partition or the threat of partition of the marital home or family business upon severance of the entirety by divorce could work injustice; furthermore the requirement in separation actions that the spouses live apart meant that one spouse lost a valuable property right but, if vindictive, could gravely embarrass and inconvenience the spouse in possession by transferring his interest to a stranger (1953 Report of NY Law Rev Comm, pp 485-486, 492; see *Kahn v Kahn,* 43 NY2d 203, 208, *supra*).

In response, the Legislature added section 1164-a to the former Civil Practice Act, which conferred upon the courts express power in separation actions to direct changes in occupancy of real property held by the entirety (L 1953, ch 698). The Legislature expanded this power to all real property in matrimonial actions by enactment of section 234 of the Domestic Relations Law (L 1962, ch 313, § 10), and then to all property by technical amendment a year later (L 1963, ch 685, § 5), without modifying the prior rule that principles of property law controlled questions of title. As explained by the Joint Legislative Committee on Matrimonial and Family Laws: "[U]nder § 234, authority to make a direction concerning possession is no longer related to the state of the title. If the circumstances warrant, the court may order that possession of property owned solely by one spouse be given to the other; in effect, it may in an appropriate case order that shelter be provided in kind. Moreover, it can, if appropriate, make an order excluding one spouse from premises owned by the other, *cf. Mayeri* v. *Mayeri,* 26 Misc 2d 6 [MEYER, J.], since this is a direction concerning possession of the property." (1963 Report of Joint Legislative Committee on Matrimonial and Family Laws, NY Legis Doc, 1963, No. 34, p 85, reprinted, NYLJ, Sept. 10, 1963, p 4, col 1.)

It is now settled law that the alimony obligation can be satisfied by providing support in kind in the nature of possession of real or personal property rather than in cash (see *Troiano v Troiano,* 87 AD2d 588; *Jones v Jones,* 84 AD2d 893; *Rauch v Rauch,* 83 AD2d 847; *Sauer v Sauer,* 67

AD2d 1082; *Schwatzman v Schwatzman,* 62 AD2d 988; *Ripp v Ripp,* 38 AD2d 65, affd on opn at App Div 32 NY2d 755), and the courts have the power to reach real and personal property in which the aided spouse has neither a legal nor an equitable interest by in personam orders under section 234, directing the spouse with such interest to apply the property in satisfaction of his support obligation (compare *Gandelman v Gandelman,* 90 AD2d 494; *Troiano v Troiano, supra; Falzone v Falzone,* 86 AD2d 540; *Barcelow v Barcelow,* 64 AD2d 1024; *Katz v Katz,* 63 AD2d 581; *Schwatzman v Schwatzman, supra; Weichold v Weichold,* 54 AD2d 1015; *Weltz v Weltz,* 35 AD2d 208; *Lerner v Lerner,* 21 AD2d 861; *King v King,* 100 Misc 2d 98, with *Doe v Doe,* 52 Hun 405; *Di Nota v Di Nota,* 217 NYS2d 724). The rights of third parties, of course, could not be impaired (see *Weseley v Weseley,* 58 AD2d 829, mot for lv to app den 42 NY2d 809; *Hickland v Hickland,* 46 AD2d 954, mod on other grounds 39 NY2d 1, cert den 429 US 941), and the same restriction would apply under the new law, as discussed below.

Under the Equitable Distribution Law, however, alimony has been replaced by maintenance, and maintenance is limited to *"payments * * * to be paid at fixed intervals for a definite or indefinite period of time"* (Domestic Relations Law, § 236, part B, subd 1, par a [emphasis supplied]). Furthermore, the most typical form of in-kind alimony — exclusive occupancy of the marital home — has now been made subject to the provision for equitable distribution of property (part B, subd 5, par f) rather than maintenance (part B, subd 6). Given the new law's purpose of investing the courts with greater equitable power to wind up the parties' "economic partnership" (Governor's Approval Memorandum, McKinney's Session Laws of NY, 1980, p 1863), I cannot construe this apparent reclassification of marital home possession as property rather than obligation as reflecting a legislative intention to reverse prior judicial interpretations of section 234 as a flexible remedy securing the support obligation or to preclude further judicial development of this open-ended provision. I note further that the Legislature in fact effected no substantive change in the jural nature of the parties' rights. Such

possession continues to be derived from judicial enforcement of the excluded spouse's obligation rather than from a judicial declaration vesting in the benefited spouse a property right in rem in the home. The reference to the marital home in section 236 (part B, subd 5, par f) incorporates section 234 by reference, and therefore a disposition of rights under that latter section (i.e., a severance of possession from title) does not follow the new law's provisions for recognizing and distributing property. Section 234 thus retains its support function in that, as under the maintenance provision of subdivision 9 of part B, there is statutory authorization for postjudgment modification; in contrast, distribution of property under subdivision 5 of part B is final and not subject to postjudgment modification (see *Portano v Portano,* 85 AD2d 622).

Nor do I interpret the Legislature's express mention of the marital home in part B (subd 5, par f) as an attempt to limit, by implication, the use of section 234 to such property and to exclude other property from the operation of that section. Given the Legislature's intention that all marital property be finally and irrevocably distributed on dissolution of the marriage, in kind or by distributive award, without postjudgment modification (see 11C Zett-Kaufman-Kraut, NY Civ Prac, § 73.01), it was not surprising that the marital home be given special recognition in that paragraph, since the marital home is the only major asset in many marriages and therefore often cannot be distributed practicably according to the scheme established by the legislation for other marital property.

Nevertheless, I concede that in construing section 234 under the new law as authorizing restraining orders against one spouse to protect the other's expectancy in marital property, I have poured new wine into an old bottle.

I have interpreted section 234 as not only authorizing enforcement of a present right to what is now maintenance, as under prior law,[2] but also as empowering the

---

2. I note in passing that it would no longer appear necessary to show special circumstances, such as danger to a spouse, in order to overcome the traditional deference

courts to prevent threatened acts prejudicial to the ripening of the expectancy into a right to distribution of marital property. It is not, therefore, the Equitable Distribution Law that, in my opinion, creates a protectable right *pendente lite.* Rather, the new law creates an expectancy that is protectable in limited circumstances through section 234 in much the same way that putative heirs are protected in litigation by EPTL 11-1.3 and SCPA 1410. I have characterized section 234 as a plastic remedy in the nature of an injunction, operating in personam ad rem (see Clark, Principles of Equity, § 280, p 374) because of its default in analogy to any other traditional provisional remedy.

Disregarding the distinction between rights in personam and in rem insofar as it is based on procedure instead of substance (see *Garfein v McInnis,* 248 NY 261; *Mitchell v Bunch,* 2 Paige Ch 606; Maitland, Equity [2d ed], lect ix, p 112; 1 Pomeroy, Equity Jurisprudence [5th ed], § 105, p 135; Hanbury and Maudsley, Modern Equity [10th ed], pp 15-17; Brown, Personal Property [3d ed], § 1.3, pp 3-4; cf. Buckland and McNair, Roman Law and Common Law [1936 ed], pp 66-68; Nicholas, Introduction to Roman Law [1962 ed], pp 99-105), I think it is clear that section 234 is an equitable remedy. Therefore it is subject to the limitation inherent in all equitable remedies, namely, that unlike legal rights, the rights they enforce are not in rem, i.e., are not strictly speaking property because they do not attach to any specific assets so as to follow them into the hands of third parties, including bona fide purchasers for value (see, e.g., Real Property Law, § 245; CPLR art 71; see, also, Maitland, Equity [2d ed], lect iv, pp 46-47).

Nor can section 234 be classified as an equitable lien or charge, i.e., a right over — as distinguished from a right in or to — the property, authorizing not recovery and use of

to the possessory right of a titleholding spouse during the pendency of a matrimonial action (see Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 234, C234:3, p 31, 1982-1983 Pocket Part, citing *Rauch v Rauch,* 83 AD2d 847; see, also, *Vitkun v Vitkun,* 108 Misc 2d 814). Given the new law's purpose of distributing property between spouses in overt, equitable fashion without regard to title (rather than covertly through the confining mechanism of alimony), it is sensible to conclude that the Legislature would not look askance at a less chary use of temporary 234 orders predicated less strictly on a need to protect persons or property and more upon the reasonable likelihood that the property being used temporarily for support will be distributed to the applicant spouse in the judgment dissolving the marriage.

such property but only such temporary control over it as is necessary to effect its sale and application of the proceeds to the satisfaction of an obligation (e.g., Lien Law, §§ 43, 92, 122, 186, 187, 200, 206; Uniform Commercial Code, §§ 2-703, 4-504, 7-210, 7-308, 9-207, 9-503, 9-504; RPAPL arts 13, 14; CPLR 5202, 5203; Civil Rights Law, § 80-b; see 13 Carmody-Wait 2d, NY Prac, § 84:93, p 213). In contrast, the object of equitable distribution and section 234 is to obtain title to or use of the specific property, respectively. Further, unlike a common-law lien or pledge (e.g., Lien Law, § 184) or section 234, an equitable lien is nonpossessory by nature (*Matter of Rosenberg*, 269 NY 247, cert den 298 US 669; 1 Story, Commentaries on Equity Jurisprudence [13th ed], § 506, pp 530-531; Brown, Law of Personal Property [3d ed], § 13.1, p 393; McClintock, Handbook of the Principles of Equity [2d ed], § 118, p 319). It is, then, a security interest rather than a beneficial interest or estate (see *Storm v McGrover*, 189 NY 568; 5 Scott, Trusts [3d ed], § 463, p 3425; 1 Pomeroy, Equity Jurisprudence [5th ed], § 105, p 135; 4 Pomeroy, Equity Jurisprudence, §§ 1233, 1234, pp 692-693), although it cannot reach property in the hands of bona fide purchasers for value (4 Kent, Commentaries [14th ed], pp 151-154; 51 Am Jur 2d, Liens, § 14, pp 153-154).

Nor does section 234 recognize a resulting trust or impress a constructive trust. The former requires a prior disposition of property under circumstances raising the inference that the taker was not to receive use of the property, e.g., an express trust failed, the trust property was not exhausted by the time the trust was fully performed, or the purchase price of the property was paid by one person but title was taken in the name of another (see 5 Scott, Trusts [3d ed], § 404.1, p 3214). The latter, like section 234 but unlike other restitutional remedies preventing unjust enrichment (e.g., common-law quasi contract, equitable liens and subrogation), directs specific performance; however, in so operating, the constructive trust imposes a duty on the owner to convey the property — title as well as possession, rather than to hold it to the use of another, as in the case with section 234 (see 5 Scott,

Trusts [3d ed], § 461, pp 3410-3411; § 462.1, pp 3414-3415; § 462.3, pp 3418-3419). Furthermore, unlike injunctive relief, the constructive trust is fundamentally remedial rather than preventive in the sense that its operation is limited to circumstances in which the roles of settlor, trustee and beneficiary can be made out, and it presupposes that the settlor had an interest in the property prior to the event or transaction giving rise to the trustee's unjust enrichment and consequent duty to surrender it to the beneficiary (see *Matter of Wells,* 36 AD2d 471, 474, affd on opn at App Div 29 NY2d 931). Equity does not act to protect the expectancy or interest of the beneficiary so much as it prevents frustration of the settlor's right to retain or dispose of his property (compare *Sharp v Kosmalski,* 40 NY2d 119 [gratuitous *inter vivos* conveyance]; *LeStrange v LeStrange,* 242 App Div 74 [fraudulent conveyance]; *Lightfoot v Davis,* 198 NY 261; *Newton v Porter,* 69 NY 133 [wrongful use of another's property], with *Trustees of Amherst Coll. v Ritch,* 151 NY 282 [conveyance by will on oral trust], and *Ellerson v Westcott,* 148 NY 149 [acquisition by homicide]). Finally, lacking any duties in regard to the property ordered possessed by a spouse under section 234, the titleholder would presumably lose his interest by execution of such passive trust into a legal estate under EPTL 7-1.1 and 7-1.2 if the section 234 remedy is characterized as creating a trust other than a constructive trust (see *Wainwright v Low,* 132 NY 313; *Matter of Wind,* 1 Misc 2d 260).

Therefore, section 234 under equitable distribution can only be characterized as injunctive in nature and operation: the right created by a section 234 order attaches only to the person of the obligor spouse and places him under a duty to specifically perform by exercising his ownership rights in the property in the manner specified in the order.

Though it is true that, as with any form of equitable relief, this right to what is owed, rather than owned by, the benefited spouse could not therefore follow the property upon transfer in violation of the order to a bona fide purchaser for value (see *Anderson v Blood,* 152 NY 285; *Jaffe v Weld,* 155 App Div 110, affd 208 NY 593; Maitland, Equity [2d ed], lect iv, pp 46-47; lect ix, pp 112-114;

Maitland, The Forms of Action at Common Law, lect iii, p 31; lect v, pp 50-51; lect vii, pp 60-62; 2 Pollock & Maitland, History of English Law [2d ed], pp 152-156; 1 Scott, Trusts [3d ed], § 10.2, p 91), it is also true that placing this limited construction on the nature of section 234 frees the court to enter such an order *pendente lite* prior to determining the parties' right in rem or ad rem (rights of ownership or rights to receive ownership) in a decision ascertaining separate and marital property and directing distribution of the latter (see Maitland, Equity [2d ed], lect ix, p 106).

Furthermore, this limitation on the protection afforded the spouse without title with regard to bona fide purchasers can be ameliorated by prudent use of other *pendente lite* remedies that serve to preserve expectancies pending their recognition and enforcement by judgment.

With respect to real property, for example, both a notice of pendency (CPLR 6501) and a restraining order against waste or damage (RPAPL 211) would clearly be available to supplement a section 234 order because the predicate for all three — that the judgment sought affects "the title to, or the possession, use or enjoyment of, real property" — now indisputably exists under the Equitable Distribution Law.

With respect to personal property, section 279 of the Debtor and Creditor Law could be invoked, *inter alia,* to set aside a conveyance or annul an obligation not only because that statute itself generously defines "debt" to include liabilities that are unmatured or contingent (§ 270), but also because *pendente lite* relief ordered pursuant to section 234 would appear to create just such a liability out of what previously had been a mere expectancy (cf. *Soldano v Soldano,* 66 AD2d 839 [alimony and child support]; *LeStrange v LeStrange,* 242 App Div 74, *supra* [support promise in anticipation of marriage]; *Bowler v Bowler,* 46 Misc 2d 821 [property transfer by husband under alimony order]; *Enthoven v Enthoven,* 167 Misc 686, affd 256 App Div 813 [postseparation agreement transfer]).

The section 234 remedy itself, however, may not be available if third parties have an interest in the property

involved. Although the definition of marital property (section 236, part B, subd 1, par c) does not exclude property in which third parties have legal or equitable interests, nothing in the new law authorizes the court to take any action protective of a spouse's expectancy that would impair or defeat the interest of such third party, and section 234 orders can only be addressed to a spouse. That section, therefore, cannot be utilized if a change of actual or constructive possession would impair the third party's rights, whether or not the order in fact directs a turnover or grants less drastic relief, such as restraining the titleholding spouse from secreting, transferring, encumbering or wasting the subject property or in any other way frustrating the impending distribution upon judgment. Accordingly, since section 234 is limited in its reach to the rights of the spouses as between themselves, a spouse seeking to preclude dissipation of marital property in which a third party has an interest that would be prejudiced by a change of possession must be relegated to the court's inherent power to issue preliminary injunctions as regulated by CPLR article 63.

Upon rendering a decision that awards a judgment dissolving the marriage, however, the court will have sufficiently established the statutory predicate for marital property distribution such that CPLR 5229 would be available to restrain the party under any pending obligation stated in the decision to pay money in the form of maintenance, child support or a distributive award in lieu of full or partial distribution of property.

CONCLUSION

The record in this case supports Special Term's decision to deny a turnover of documents held by plaintiff as marital property, but it does not support the court's decision to enjoin defendant from disposing of all marital property held by him. This ruling, however, does not vitiate the fact that Special Term was invested with the power to issue such orders under the Equitable Distribution Law through section 234 of the Domestic Relations Law. The order appealed from should be modified accordingly.

LAZER, J. P., MANGANO, O'CONNOR and BROWN, JJ., concur; O'CONNOR, J., concurs further, with an opinion.

Order of the Supreme Court, Westchester County, entered May 12, 1981, modified by deleting therefrom the provision which restrained the defendant husband from disposing of marital property during the pending litigation. As so modified, order affirmed insofar as appealed from, without costs or disbursements.