OPINION OF THE COURT
David B. Saxe, J.
In this action the plaintiff wife seeks to have the court *955 impose upon the defendant husband a preliminary injunction restraining the defendant from divesting the marital property in his control, or from placing these assets at risk of loss. She further asks the court to direct defendant to liquidate high-risk investments in such manner as would be required of a fiduciary.
Plaintiff in the present action is 51 years old and an elementary school teacher. Defendant is 52 and is a self-employed investor with a net worth in excess of $10,000,000; he has been a partner at Lehman Brothers, and was a senior vice-president at E. F. Hutton & Co. In addition, he is a director of three public companies, Telcon USA, MA/CON, and of Lloyds of London, at which he is also a part of a syndicate. Plaintiff alleges that in order to participate in this syndicate defendant has pledged the couple’s entire net worth and posted a letter of credit in the approximate amount of $100,000. The defendant, as conservator of his incapacitated father’s affairs, supervises securities investments which exceed $20,000,000; defendant supervises his own securities accounts of $5,000,000.
The parties have been married 32 years, and are the parents of four grown children. During the marriage the parties had as their residences a 12-room cooperative apartment on Park Avenue with an estimated fair market value of $3,000,000, and a home in Locust Valley, New York, with a fair market value of over $2,000,000. Both properties are held solely in defendant’s name, and plaintiff contends that the defendant has borrowed $1.5 million from his parents, pledging the house and apartment as security for these loans.
During the pendency of a matrimonial action, particularly one where large sums of money are involved, there may be a risk that one spouse will secrete, transfer or dissipate assets so as to preclude an equitable distribution of that property following the dissolution of the marriage. In an effort to stop the potentially improper transfers or dissipation of these assets, and to, in effect, maintain the status quo during this period, the court has the authority to impose restraints upon the parties, the most significant of which being the preliminary injunction. In exercising its powers of restraint the court looks to the types of assets involved, which may create a disparity in the treatment of assets that can generally be expected to remain relatively stable over the pendency of the action and assets such as publicly traded stocks, securities and commodities which by their nature are volatile.
*956 The defendant in the present action has spent his professional life as an investment banker and he is therefore familiar with the volatility and risks of the investment world. In addition, he sits on the boards of several large corporations.
But, the circumstance the court must deal with at present is one in which the defendant has a different role. Here, he is not an investment banker or director who has been voluntarily entrusted assets by faceless investors to whom he owes a fiduciary obligation with a standard of care and conduct to invest wisely; at issue here is defendant’s control of a considerable amount of resources which are in dispute in a matrimonial action in which he is a party, and these assets will ultimately be the subject of a determination by the court as to its division between the spouses under the equitable distribution statute. The plaintiff requests the imposition of a fiduciary obligation upon the husband with respect to his dealing with these marital assets during the pendency of the divorce action. The proponent of this standard readily admits that this request is a novel one. It is necessary for the court to examine the development of restraints upon asset control that can be imposed at the discretion of the court.
With the advent of equitable distribution the court would routinely restrain abnormal dispositions of the parties’ assets as an automatic right. In Froelich-Switzer v Switzer (107 Misc 2d 814 [1980]), the plaintiff wife had made an application to the court for a temporary restraining order to restrain her husband from disposing of his assets pending a determination of the motion for a temporary restraining order seeking the same relief. The court held (at 815) that "neither party may alienate, hypothecate or otherwise dispose of or encumber any asset or any interest therein, except in the normal course of business or personal affairs.” The court in Froelich-Switzer had as its goal the maintenance of the "financial status quo of both parties, as it existed at the time of the commencement of the action” (supra, at 815). However, this type of approach has not generally been followed.
The court no longer imposes blanket restraints as a matter of right, but the power to restrain is stated in the leading case Leibowits v Leibowits (93 AD2d 535 [2d Dept 1983]), where the Appellate Division upheld restraints against the plaintiff wife preventing her from disposing of marital property during the pendency of the divorce action. The court found that Domestic Relations Law § 234 gives the court presiding over a matrimonial action the authority to impose injunctive restraints upon *957 the ability of a spouse to dispose of assets during the pendency of the action. The court in Leibowits, relying on the Domestic Relations Law, reasoned that since section 234 gave the court power to compel one spouse to turn over property to the other, the court also has the power to grant the lesser relief of restraining a spouse from disposing of property.
However, interim restraints such as the ones requested by the plaintiff in the present action have not been routinely made available. The court requires that the application be supported by a showing that the spouse to be restrained is attempting to, or threatens to, dispose of marital assets so as to impair the movant’s ability to obtain proper relief at the dissolution of the marriage. The court in Steinberg v Steinberg (87 AD2d 782 [1st Dept 1982]) required "an adequate showing that defendant is seeking to dispose of marital assets so as to prejudice her right to an equitable distribution of such assets.” Plaintiff wife had failed to make this showing in regard to artwork she contended her husband, Saul Steinberg, was trying to dispose of.
More recently, in Guttman v Guttman (129 AD2d 537 [1st Dept 1987]) the court vacated an injunction barring the defendant husband, a successful commodities broker, from mortgaging his separate property, a summer house in Long Beach, New York. The court required that restraints on property transfers "be supported by proof that the spouse to be restrained is attempting or threatening to dispose of marital assets so as to adversely affect the movant’s ultimate rights in equitable distribution” (supra, at 539).
In this case, the defendant has been in complete control of the marital assets throughout a long and prosperous marriage. In order to obtain a preliminary injunction the plaintiff must produce evidentiary substantiation for her contention that the defendant is transferring or otherwise improperly disposing of assets. The wife characterizes what defendant has given to the children of this marriage, such as investing in one son’s filmmaking, paying the living expenses of his married daughter while her husband attends graduate school or cars and jewelry for the other children, as wholesale transfers that are done purposely to dissipate or encumber the marital assets in order to defeat plaintiff’s equitable distribution claim. However, these transfers appear to be merely the types of gifts which are in keeping with defendant’s financial position, and the type of gift giving that he had engaged in during the course of the marriage. Consequently, no showing is made *958 that marital assets are being improperly dissipated, and an injunction against transfers is unwarranted.
Moreover, we must take into account the volatile nature of most of the parties’ assets, and consider whether restraints on these assets would do more harm than good. The courts have demonstrated a particular understanding of the issue of restraints placed upon the disposition of the types of assets that are most affected by the financial market. In Richter v Richter (131 AD2d 453 [2d Dept 1987]), where the husband in the action maintained speculative brokerage accounts, the court held that the imposition of a blanket preliminary injunction was unduly restrictive insofar as it applied to trading securities. The court voiced the concern that "[s]ince the brokerage accounts maintained by the defendant [were] speculative and volatile investments, [the] restriction * * * may ultimately harm, rather than preserve, this asset” (supra, at 455). The Appellate Division, therefore, modified the lower court’s injunction so as to allow the defendant to transact business within the accounts, provided that the cash or proceeds were retained in the accounts and were available upon the equitable distribution of the assets.
The court in Palitz v Palitz (111 AD2d 119 [1st Dept 1985]) and Monroe v Monroe (108 AD2d 793 [2d Dept 1985]) were similarly mindful of the possible effect of an injunction on large or volatile assets. In Monroe the court allowed the defendant husband to buy and sell securities since, such assets being volatile, freezing them may harm both parties rather than preserve the assets. In Palitz, where there was a question as to whether assets of a dissolved corporation constituted marital property, the lower court had required $11 million to be placed in escrow in an interest bearing account. The Appellate Division stated that this type of account is not a realistic way of managing such a substantial sum, and allowed the attorneys holding the money to make investments with it that would yield greater returns.
In Schlosberg v Schlosberg (130 AD2d 735, 736 [2d Dept 1987]), where the defendant husband appealed from a ruling which ordered him to maintain all existing securities, the court affirmed the imposition of "minimal restraint[s]” upon the husband’s brokerage accounts, calling these small restraints a proper exercise of the court’s discretion "in view of the possibility that any appreciation in these accounts may constitute marital property.”
*959 The foregoing discussion makes clear that the law with respect to the control of marital assets during divorce actions is well developed, flexible and responsive to the relative needs of the parties. Application of its principles to the present case leads me to conclude that it would be unwarranted to impose upon the titled spouse a fiduciary obligation as requested by the plaintiff; such an obligation would be highly burdensome and might indeed be detrimental to the nontitled spouse.
The cardinal rule regarding the conduct of a fiduciary holding funds for investment is the "prudent man rule” which has been adopted in New York and appears in the EPTL as follows: "A fiduciary holding funds for investment may invest the same in such securities as would be acquired by prudent men of discretion and intelligence in such matters who are seeking a reasonable income and preservation of their capital”. (EPTL 11-2.2 [a] [1].)
The primary objective of the most typical type of fiduciary, the trustee, is to keep the funds entrusted in a state of security productive of income and subject to future recall. A trustee may not speculate (Matter of Newhoff, 107 AD2d 417 [2d Dept 1985]), and investment of a large portion of trust funds in a single security may be the basis of a finding of imprudence (Durant v Crowley, 197 App Div 540 [1st Dept 1921]). The imposition of this fiduciary standard upon the defendant would increase the extent of legal responsibilities imposed upon titled spouses, without at the same time producing any discernible economic benefit. In some cases, such a standard might even be economically disastrous to the nontitled spouse. I believe that the protections reflected in current case law are adequate to protect the nontitled spouse while at the same time permitting the titled spouse sufficient flexibility to manage and invest property which will ultimately be the subject of an equitable distribution. Therefore, the imposition of a fiduciary standard is inappropriate and unwarranted.
In the present action, equitable distribution will ultimately be determined by the court. While the interests of justice usually require that the marital assets not be significantly disturbed until there can be a final determination as to the rights of the respective spouses, there exist here assets which may potentially be harmed if an injunction is placed on the defendant’s ability to manage them. The record reveals that the defendant has had a long and successful career managing securities and other investments. Further, the plaintiff has not *960 shown that the defendant has dissipated or threatened to deplete the marital assets over which he has had control throughout the marriage as well as during the pendency of this matrimonial action. Plaintiff’s request for a preliminary injunction restraining defendant’s control over the marital assets is, therefore, denied and the temporary restraining order is vacated.