OPINION OF THE COURT
Matthew F. Coppola, J.
In this case of apparent first impression, plaintiff husband moves, pendente lite, for an order directing defendant wife to execute any documents necessary to secure refinancing of the loan on marital premises held by the entirety.
*512 The salient facts are unopposed. Plaintiff is presently in possession of the home and paying all expenses thereof. The home was purchased in 1980 at the prevailing mortgage interest rate of 15%. With a present mortgage balance of $44,000 his monthly payment of principal and interest is $555.36. Refinancing at the anticipated rate of 9Vi% will reduce this monthly payment by $186.36 per month.
Defendant’s opposition to the proposed financing can best be explained in her own words:
"The two issues left in this action are the amount of child support he [plaintiff] will pay, and equitable distribution of the marital property.
"The principal assets to be divided consist of the marital home, savings and certain jewelry (including my wedding and engagement rings), all of which are in my husband’s possession.
"Net worth statements have been exchanged, and we are now scheduled for E.B.T.’s.
"My husband’s motion to force me to sign papers which would enhance his financial position is a strategy to force me to settle on his terms. In fact, it is part of the negotiating which is being conducted by the lawyers. My husband seeks by this motion to gain a strategical advantage for purposes of negotiation.”
In the court’s opinion, defendant’s position is untenable. Although, it is possible to envision reasonable objections to refinancing even where the refinancing will secure lower interest rates, defendant’s explanation makes no sense. The home is undeniably a marital asset. By defendant’s own statement, the issues here include distribution of the marital assets and savings and payment by plaintiff of child support. Yet defendant, by her actions, is reducing the value of the distributable asset and the amount which will be available to plaintiff for child support payments. Moreover, by obtaining better financing terms, plaintiff is not securing an unreasonable negotiating advantage. In a very real sense, he would be conserving marital assets.
The uniqueness of the fact pattern herein raises the question of whether the court has the power to award the relief sought. At first blush it might appear that the holding in Kahn v Kahn (43 NY2d 203) would prevent the court from acting thereon. In Kahn, the Court of Appeals held that, where the legal relationship between husband and wife was *513 not altered, Domestic Relations Law § 234 did not grant any authority to the court to order a sale of the marital residence. Thus, it might be argued that, since the mortgaging of realty is a diminution of the incidents of ownership, the court is likewise without power to sanction a refinancing pendente lite. However, the reasoning behind Kahn is that the court was without power to affect the tenancy by the entirety unless it accomplished that by altering the legal relationship between the parties. Since a mortgage will have no effect upon the way in which the property is held it does not fall within the Kahn proscription.
Moreover, it is evident that the law favors preservation of marital assets. To this end, the Appellate Division has held that compliance with the strict requirements of CPLR article 63 is not necessary in order to obtain injunctive relief to protect marital assets during the pendency of a divorce proceeding (Leibowits v Leibowits, 93 AD2d 535). In this light, it should be realized that the present motion is an application for affirmative injunctive relief to prevent the wasting of assets. The court can discover no cognizable distinction between an affirmative injunction and one in the nature of prohibition, at least not one which would deprive the court of authority with respect to the former but not the latter. Moreover, the language of the aforecited Leibowits case appears particularly applicable to the problem at hand:
"Section 234 of the Domestic Relations Law extended the judicial power over the possession of property to encompass both real and personal property. The power was clearly designed to be utilized without regard to the state of title (1963 Report of Joint Legislative Committee on Matrimonial and Family Law, NY Legis Doc, 1963, No. 34, pp 81, 84-85; 2 Foster-Freed, Law and the Family, § 22:37, p 103), and it gives the court 'broad and flexible control’ over the possession of property (Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, § 234, p 33, 1982-1983 Pocket Part), by providing in-kind support through possession of real (Scampoli v Scampoli, 37 AD2d 614), or personal property (Troiano v Troiano, 87 AD2d 588; Silbert v Silbert, 22 AD2d 893, affd 16 NY2d 564), by excluding one spouse from premises occupied by another (Minnus v Minnus, 63 AD2d 966), or by restraining transfers of property pendente lite (Zeeve v Zeeve, 44 AD2d 838; Weaver v Weaver, 37 AD2d 614).
"The section 234 power to direct one party to deliver posses *514 sion to the other necessarily includes the power to prevent a party from frustrating such delivery by improper disposition of assets. In these days, that power of restraint is vital to meaningful enforcement of the equitable distribution statute. Not only is this conclusion consistent with the new law’s recognition of the parties’ 'economic partnership’ (Governor’s Approval Memorandum, McKinney’s Session Laws of NY, 1980, p 1863), but it has support in the State’s abiding interest in family relationships (Fearon v Treanor, 272 NY 268; di Lorenzo v di Lorenzo, 174 NY 467), especially in allocating the economic burdens so that members of the former family group are not 'destroyed by crushing economic and psychological pressures’ (Phillips v Phillips, 1 AD2d 393, 397, affd 2 NY2d 742).” (93 AD2d, at 537-538.)
In this case, it is the defendant’s refusal to act which is causing the dissipation of marital assets. Therefore, it is no less necessary to the enforcement of the equitable distribution statute that the court have the power to direct an affirmative act as it is that the court have the power to restrain. The two are merely two ends of the same legal tool, the use of which end depending upon the wrong to be corrected.
For the foregoing reasons, the motion is granted. Moreover, defendant is cautioned that, at the trial of the underlying action, she will be held accountable for any loss sustained as a result of any unreasonable withholding of her needed approval to refinancing.