OPINION OF THE COURT
Vito M. DeStefano, J.
The plaintiff, represented by counsel, moves for an order “appointing and authorizing the Plaintiff to sell the real property owned by the parties at 953 N. 6th Street, New Hyde Park, New York and to execute any and all documents necessary to effectuate said sale.” Simultaneously filed with the motion was a summons and complaint in which the plaintiff asserted three causes of action alleging the following: that the defendant breached a separation agreement entered into in October 2007[1] “by failing to cooperate with the real estate brokers, by failing to maintain the property in a clean and neat condition, and by refusing to execute a contract of sale with a bona fide purchaser,” and asking the court to “appoint him to sell the parties’ residence and to execute any and all documents necessary to effectuate the sale” (complaint, exhibit D to plaintiffs motion lili 6, 7); that by reason of the breach of contract, plaintiff incurred “additional and unnecessary expenses,” and asking the court to award $20,000 in damages (exhibit D If 11); that he is entitled to counsel fees as a result of the defendant’s actions (exhibit D 1Í14) .[2]
In support of his motion, the plaintiff avers that after the parties entered into the separation agreement, and agreed to put the “house ... on the market ... to be sold as soon as possible,” the “[defendant has done everything within her power to prevent and thwart the sale of the property,” refusing to cooperate with real estate brokers, acquiring dogs and allowing “them the run of the house,” and keeping the property in disarray (affidavit of plaintiff in support of motion 1Í1Í 3-9). The plaintiff further asserts that he can no longer afford to “carry the house” and that he has a bona fide offer in the amount of $375,000 (affidavit of plaintiff 1iH 10-13). According to the *824 plaintiff, if the court does not authorize the sale of the property, “the only asset [he has] shall be irretrievably lost” (affidavit of plaintiff 1i 19).
Exhibit B to the plaintiffs motion, which is also referenced by the defendant, is an August 18, 2008 letter from his then-attorney Gail Berkowitz, to the defendant’s then-attorney Patricia Manzo, in which she complains that the defendant failed to give access to real estate brokers, kept the house in disrepair and filth, and allowed her dogs to dig up the yard, and urinate and defecate in the house. The letter notes that the house was on the market for IV2 years “with no buyers in sight” and asked that the defendant agree to reduce the sale price to $449,000. Further, according to Ms. Berkowitz, the plaintiff “agree[d] to reduce the price $5,000 per month until the home is sold. Your client has refused . . . .”
In opposition to the motion, the defendant, pro se, indicates that she is willing to sell the house, however, she had “certain concerns” regarding the balance of the mortgage and equity in the house at present; who bore responsibility for repayment of any loans required to pay for mortgage, equity, and property taxes; whether there was proof that the plaintiff paid the mortgage after the separation agreement was signed; her desire not to give up loss of inheritance or pension rights; the fact that mortgage payments were three months in arrears. As an “Exhibit” to her motion, defendant asserts that she “agreed to $449,000 [as a sale price for the house],” but not to reducing the price by $5,000 per month and not to the amount which has been offered to buy the house ($375,000). No defects were raised by the plaintiff with respect to the defendant’s affidavit.
On October 31, 2008, this court placed the matter on its calendar for a conference to aid in disposition of the motion. The parties appeared on November 6, 2008 and reiterated the allegations and positions stated in their papers. The parties did not reach a settlement at the conference, necessitating the within decision and order.
The court notes that the plaintiffs motion fails to articulate the precise nature of the relief requested or the statutory or case law authority for granting any relief. The court finds it necessary to remind plaintiffs counsel that attorneys are always under an ethical obligation to cite applicable law to the court (Code of Professional Responsibility EC 7-23). An attorney’s failure to cite such authority is an abdication of responsibility, undermining the adversarial process and burdening the court unnecessarily.
*825 Regarding the motion, it does not appear that plaintiff is seeking injunctive relief under article 63 of the CPLR. That statute permits the court to grant an injunction
“where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiffs rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.” (See CPLR 6301.)
As such, the statute appears to be inapplicable here, notwithstanding that in presenting this motion to the court, plaintiffs counsel suggested its applicability.
Rather, the relief requested in the motion appears to be in the nature of a temporary receivership to sell the marital residence for a specific amount (CPLR 6401 et seq.).[3] Under CPLR 6401, the court
“[u]pan motion of a person having an apparent interest in property which is the subject of an action in the supreme . . . court, [may appoint] a temporary receiver . . . prior to judgment . . . where there is danger that the property will be removed from the state, or lost, materially injured or destroyed. . . . The court appointing a receiver may authorize him to take and hold real . . . property, and sue for, collect and sell debts or claims, upon such conditions and for such purposes as the court shall direct” (CPLR 6401 [a], [b]).
Howsoever the relief sought in the plaintiffs motion is characterized, it must be denied for the reasons that follow.
The parties’ separation agreement states the following, in relevant part (separation agreement, exhibit A to plaintiffs motion at 7):
*826 “ARTICLE IV
“MARITAL RESIDENCE
“1. The parties acknowledge that the marital residence ... is owned by the parties as tenants by the entirety. The present value of the marital residence is $479,000 with an outstanding mortgage balance due of —xx and an Equity loan balance due of $150,000.00 [as in original].
“2. The marital residence is currently for sale and proceeds from the sale will be divided equally between the parties after all mortgages, equity loans, closing costs, etc. have been paid. The parties further agree that until such time that the marital residence is sold, the . . . [Husband] will continue to be responsible for all mortgage payments, equity loan payments and property taxes on said marital residence.
“3. In addition, the parties further agree to pay the following from the sale of proceeds:
“a. Re-payment to . . . [Wife’s] attorney for any and all sums advanced on the . . . [Wife’s] part for car repairs.
“b. In the event the . . . [Husband] has to borrow sums to prevent the marital residence from going into foreclosure, both parties will be responsible for repayment of said loans up to a cap of $10,000. . . . [Husband] will provide proof of loan proceeds being utilized for mortgage payments.
“c. Re-payment to the parties’ son JOHN a loan in the amount of $6,000.00 borrowed by the . . . [Husband] to pay mortgage payments on the marital residence. . . . [Husband] will provide any and all necessary proof requested by . . . [Wife].”
It is relevant to note that the separation agreement is not, by its strict terms, an agreement to sell the marital residence. Instead, it appears to reference some prior understanding of the parties to sell the marital residence — which was already listed for sale, and goes on to recite how proceeds were to be divided, who would be responsible for mortgage payments until the residence was sold and what deductions and reimbursements were to be made from the proceeds.
Further, although the separation agreement does not set forth the actual sale price of the marital residence (as indicated, it *827 states the “value” placed on it by the parties), there is no dispute that the residence was originally listed for sale at the price of $479,000, and that it was subsequently lowered by agreement of the parties to $449,000. This is established in exhibits to the motion evidencing the parties’ understanding, the affidavits submitted on the motion and the course of performance of the parties.
Assuming that there is no issue regarding the existence of an enforceable agreement to sell the property, which the court need not address at this time, neither is there any issue that the amount currently offered to purchase the residence ($375,000), is well below the sale price contemplated and agreed to by the parties. Under the circumstances, this is fatal to the plaintiffs motion.[4]
Initially, it is relevant to note the general principle, frequently cited in matrimonial actions, that courts may not direct the sale of marital property, particularly property held by spouses as tenants by the entirety, until the legal relationship between them is altered by a judgment of divorce, annulment, a judicial decree of separation or by declaring a void marriage a nullity (e.g. Kahn v Kahn, 43 NY2d 203 [1977]; Thomas v Samuel, 40 AD3d 744 [2d Dept 2007]; Jancu v Jancu, 241 AD2d 316 [1st Dept 1997]; Kayden v Kayden, 234 AD2d 345 [2d Dept 1996]).[5]
An exception to the prohibition against selling “marital property” prior to entry of judgment or decree exists where the spouses consent to the sale (see Adamo v Adamo, 18 AD3d 407 [2d Dept 2005]; Kayden v Kayden, supra; Harrilal v Harrilal, 128 AD2d 502 [2d Dept 1987]). In the breach of contract action at bar, however, to the extent that the plaintiff seeks to compel the sale of the marital residence (held by the parties as “tenants by the entirety”) for a price not agreed to by the defendant, the matter does not fall within any exception.
That the plaintiff claims there will be “waste” or asset dissipation if the marital residence is not sold for $375,000 is simply not relevant.
*828 In Stewart v Stewart (118 AD2d 455 [1st Dept 1986]), a consolidated matrimonial action, the husband defaulted in his pendente lite mortgage and maintenance obligations respecting the marital residence, a cooperative apartment, the shares of which were owned by him and his wife. According to the husband, the mortgagee on the apartment, Bowery Savings Bank, notified him that it had made maintenance payments in excess of $8,940, that it was accelerating its loan and planned on instituting foreclosure proceedings. The husband moved to enjoin a judicial sale (on the basis that it would not realize fair market value) and order a private sale. The wife opposed the husband’s application for a private sale contending that the court was not empowered to compel the disposition of marital property pendente lite.
After the Supreme Court ordered the private sale (which was ultimately unsuccessful) and enjoined the judicial sale, the First Department reversed holding that the Supreme Court lacked authority to compel disposition of marital property, the Court of Appeals decision in Kahn v Kahn (supra) being dispositive of the issue.
Similarly, in Sedgh v Sedgh (142 Misc 2d 931, 931 [Sup Ct, Nassau County 1989]), the Supreme Court (Winnick, J.), denied the defendant’s motion for an order, pendente lite, “directing sale of the marital premises [which was the subject of two mortgage foreclosure actions], title to which [was] held by the parties as tenants by the entirety.” In so doing, the court drew a distinction between imposing restraints on property, which is specifically authorized by the Domestic Relations Law, and compulsory sale, which is not (see also CH v RH, 18 Misc 3d 268 [Sup Ct, Nassau County 2007] [holding that court had no authority to direct the sale of property pendente lite]; Dweck v Dweck, 8 Misc 3d 1013[A], 2005 NY Slip Op 51091[U] [Sup Ct, Nassau County 2005] [holding that the court had no authority to direct the sale of the marital residence or to order that a party execute documents necessary to obtain a $300,000 mortgage prior to judgment, even though foreclosure might result]).
Although there is conflicting authority on the subject (see e.g. Gordon v Gordon, 144 Misc 2d 27 [Sup Ct, NY County 1989]; Lidsky v Lidsky, 134 Misc 2d 511 [Sup Ct, Westchester County 1986]; St. Angelo v St. Angelo, 130 Misc 2d 583 [Sup Ct, Suffolk County 1985]), the court declines to follow those cases, the holdings of which are at odds with the authority set forth above.
*829 The foregoing establishes that the court is not authorized to order the property sold at a price of $375,000. Neither is there any basis to grant a receiver authority to do something which the court cannot. Furthermore, it is noted that a temporary receiver is “merely a custodian of property who takes and holds possession without title,” and, thus, cannot ordinarily sell property (91 NY Jur 2d, Receivers §§ 21, 39, at 490, 508). Significantly, there is no explicit language contained in CPLR 6401 which empowers a temporary receiver to sell property. And, although the powers of a receiver “may be extended or limited” (CPLR 6401 [b]), they may not be extended in a way that violates established law.
The contours of CPLR 6401 can best be understood by reference to other statutes which authorize the appointment of receivers. For example, CPLR 5106 authorizes a court “by or after judgment . . . [to] appoint a receiver of property ... to carry the judgment into effect or to dispose of the property according to its directions. Unless the court otherwise orders, such a receivership shall be subject to the provisions of article sixty-four” (see also Trezza v Trezza, supra [Supreme Court properly appointed former wife receiver to sell marital residence in order to enforce parties’ agreement]).
The case law also supports the conclusion that temporary receivers cannot be empowered to sell property to which they have no title (see Security Natl. Bank u Village Mall at Hillcrest, 79 Mise 2d 1060 [Sup Ct, Queens County 1974] [temporary receiver has no title to condominium units, and hence, no authority to sell them; the court did suggest, however, that a temporary receiver might be able to sell perishable property]; see also Brush v Jay, 113 NY 482 [1889] [error to order receiver to sell partnership property pendente lite]; Small v Muller, 67 App Div 143 [2d Dept 1901] [error for court to authorize sale of property, since the primary duty of receiver is to preserve property]).
At bar, therefore, that the plaintiff cannot afford to “carry the house” and that foreclosure may result, provides no basis to order the marital residence sold in violation of the parties’ agreement.
Accordingly, the motion is denied.

. The parties’ separation agreement is actually dated January 22, 2008 and acknowledged on two separate dates in February 2008.

. There is no matrimonial action pending. As indicated, the complaint appears generally to sound in breach of contract.

. The court notes, however, the Second Department’s decision in Trezza v Trezza (32 AD3d 1016 [2d Dept 2006]). In Trezza, after the former wife moved, postjudgment, for an order, inter alla, appointing her “agent of the former husband to facilitate the sale” of the former marital residence, the Supreme Court appointed her receiver for the limited purpose of effectuating the sale. On appeal, the Second Department affirmed but noted that the Supreme Court’s order amounted to a sua sponte appointment.

. It is also fatal to the first cause of action in plaintiffs complaint, which seeks essentially the same relief as the motion.

. Tenants by the entirety are deemed to be seized of an undivided interest in the whole property — this following from the common-law and natural law principle that “husband and wife are one person in law,” holding title as a unified legal entity (see generally Matter of Violi, 65 NY2d 392 [1985]; Scheinkman, New York Law of Domestic Relations § 2:6, at 36 [11 West’s NY Prac Series 1996]).